229 P.3d 1133

**Jan Michael WEINBERG,
Petitioner/Plaintiff–
Appellee,**

v.

**Brenda Irene DICKSON–WEINBERG,
Respondent/Defendant–Appellant.**

No. 27984.

Supreme Court of Hawai'i.

April 7, 2010.

Charles T. Kleintop and Dyan M. Medeiros (of Kleintop, Luria & Medeiros), Honolulu, and Margaret C. Jenkins, for petitioner/plaintiff-appellee Weinberg.

Peter Van Name Esser, Honolulu, for respondent/defendant-appellant Dickson–Weinberg.

MOON, C.J., NAKAYAMA, ACOBA, and RECKTENWALD, JJ., and Circuit Judge WILSON, in place of DUFFY, J., recused.

Opinion of the Court by MOON, C.J.

On March 19, 2010, this court accepted petitioner/plaintiff-appellee Jan Michael Weinberg's application for a writ of certiorari, filed February 8, 2010, seeking review of the Intermediate Court of Appeals' (ICA) November 10, 2009 judgment on appeal, entered pursuant to its October 14, 2009 published opinion, *Weinberg v. Dickson–Weinberg,* 121 Hawai'i 401, 220 P.3d 264 (App.

2009). Therein, the ICA, *inter alia:* (1) reversed the Family Court of the First Circuit's[1] April 7, 2006 order denying respondent/defendant-appellant Brenda Irene Dickson–Weinberg's (Dickson) motion to extend pretrial deadlines; (2) affirmed that part of the May 18, 2006 divorce decree granting Weinberg's divorce but vacated those parts of the divorce decree denying Dickson's alimony and dividing the former couple's marital property; and (3) vacated the family court's findings of facts (FOFs) and conclusions of law (COLs) filed August 16, 2006.

Briefly stated, this case centers around Weinberg's high-profile, multi-million dollar divorce from Dickson. During the extensive pretrial proceedings, Dickson filed two motions to extend pretrial deadlines, arguing that she was not consistently represented by an attorney and required more time to prepare for trial. The family court, however, denied Dickson's motions and, thereafter, granted Weinberg's motion in limine to bar Dickson from presenting *any* evidence at trial that she had failed to provide in violation of the pretrial submission deadlines.

Dickson appealed, arguing, *inter alia,* that the family court abused its discretion in refusing to extend the pretrial deadlines and precluding her from introducing evidence at trial. The ICA agreed and, ultimately, vacated the FOFs and COLS, remanding the case to the family court for further proceedings. Notwithstanding the ICA's conclusion and resulting remand, the ICA went on to address—for purposes of providing "guidance on remand"—Dickson's contentions that the family court incorrectly valued Weinberg's law practice in section G. of the "Discussion" and also opined regarding the validity of a premarital individual retirement account (IRA) agreement, which was not admitted into evidence, in section C. of the "Discussion."

On application, Weinberg primarily argues that the ICA gravely erred in reversing the family court's denial of Dickson's motion to extend pretrial deadlines in spite of Dickson's "delaying tactics" and the prejudice to Weinberg. We agree with the ICA that the family court abused its discretion in denying Dickson's motions to extend pretrial deadlines and, thereafter, sanctioning her by precluding her from proffering evidence that was adduced in violation of the pretrial deadlines. However, we believe that the ICA erred when it engaged in additional analysis based in part on its speculation as to the facts that will be adduced on remand. Therefore, we vacate sections C. and G. of the "Discussion" in the ICA's opinion and affirm in all other respects.[2]

## I. BACKGROUND

Inasmuch as we take issue with only sections C. and G. of the "Discussion" in the ICA's opinion, we adopt and incorporate herein by reference the facts regarding the "Background," "Pretrial Proceedings," "Trial Proceedings," and "Post–Decree Proceedings" set forth in the ICA's opinion.

## II. STANDARDS OF REVIEW

### A. Family Court Decisions

■ Generally, the family court possesses wide discretion in making its decisions. *See In re Jane Doe, Born June 16, 1994,* 101 Hawai'i 220, 227, 65 P.3d 167, 174 (2003). Specifically,

> [the family court's] decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [this court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant ... [and its] decision clearly exceed[ed] the bounds of reason.

---

1. The Honorable Darryl Y.C. Choy presided over the trial and entered the divorce decree.

2. We observe the ICA's November 10, 2009 judgment on appeal states in part that "the case is remanded for further proceedings *consistent with [its] opinion.*" Inasmuch as this court is vacating portions of the ICA's opinion and entering a separate opinion, we vacate the ICA's November 10, 2009 judgment on appeal, and a new judgment on appeal will be entered at the appropriate time.

*Id.* (internal quotation marks and citations omitted) (some brackets and ellipsis in original).

### B. *Motions to Extend Pretrial Deadlines*

Hawai'i Revised Statutes (HRS) § 571-8.5(a)(5) (2006) provides that "district family judges may ... [g]rant continuances in proceedings before them." This court has stated that "[a] court has the discretion to grant or refuse a continuance of a proceeding in the orderly administration of justice. This discretion is a judicial one and is subject to review for abuse." *Sapp v. Wong*, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980) (citations omitted).

### C. *Sanctions*

 "The imposition of a sanction is generally within the discretion of the trial court." *Ek v. Boggs*, 102 Hawai'i 289, 299, 75 P.3d 1180, 1190 (2003) (citation omitted). In reviewing whether a trial court's dismissal of a claim as a discovery sanction constitutes an abuse of discretion, appellate courts consider the following five factors: "(1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [party moving for sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co.*, 8 Haw.App. 354, 362, 802 P.2d 1203, 1207 (1990) (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir.1988) (other citations and internal quotation marks omitted)).

### III. *DISCUSSION*

Weinberg argues on application that the ICA erred in reversing the family court's denial of Dickson's motion to extend pretrial deadlines in spite of Dickson's "delaying tactics" and the prejudice to Weinberg. Preliminarily, we observe that, with respect to such argument, Weinberg points out an alleged "internal[ ] inconsisten[cy]" within the ICA's opinion, arguing that the ICA erred "when it overruled the [family] court's order denying an extension of all pretrial deadlines, relied

on *some* of the 276 [FOFs] entered below but then vacated *all* [FOFs] and substituted its judgment for that of the [family] court in determining issues of fact and credibility." Specifically, Weinberg argues:

> In vacating the 276 [FOFs] signed by three [f]amily [c]ourt judges, the ICA gave no explanation as to how or why the [FOFs] were clearly erroneous. Moreover, it clearly relied on some of the [FOFs] in its rulings on various orders it affirmed. At best, the ICA's opinion is internally inconsistent on its face and[,] therefore[,] warrants the granting of certiorari. At worst, the ICA's opinion is a destructive invasion of the [family] court's wide discretion to decide facts and credibility. With this opinion looming as precedent over their heads, trial judges throughout the state will be reluctant to exercise their inherent power to control their courtrooms and cases.... The ICA's opinion will encourage abusive behavior by litigants and trial by ambush. Court rules will be increasingly ignored, trials delayed, and appeals fomented, all because trial judges will be mindful of the ICA's opinion here which undermined their authority.
>
> . . . .
>
> The ICA cobbled together "facts" upon which it relied for its conclusion, citing to some [FOFs] and misstating facts unsupported by the record. The ICA's [o]pinion did not state how or why *any* of the [FOFs] were clearly erroneous.
>
> . . . .
>
> The ICA's opinion ignores the [f]amily [c]ourt's fact and credibility determinations, is internally inconsistent in that it relies on certain [FOFs] but then vacates all 276 [FOFs], relies on "facts" which are not record evidence, and publishes a legal precedent with far-reaching negative consequences not only for [f]amily [c]ourt judges, but civil and criminal judges in this [s]tate.

(Emphasis in original.)

In making his "internal inconsistency" argument, Weinberg apparently believes that it was inappropriate for the ICA to vacate the FOFs and then rely on them. However,

Weinberg incorrectly reads the ICA's opinion. The ICA correctly reviewed the record—including the family court's FOFs—and concluded, based on the relevant FOFs, that the family court, *inter alia,* abused its discretion in denying Dickson's motion to extend pretrial deadlines and in sanctioning her. As a result, the ICA remanded the case for further proceedings, *i.e.,* a new trial, thereby necessitating the vacating of the FOFs and COLs. Consequently, contrary to Weinberg's belief, the ICA did not rely on vacated FOFs. In our view, Weinberg's "internal inconsistency" argument is a weak attempt to discredit the entirety of the ICA's opinion as he raises the same argument throughout his application.

Nevertheless, the ICA's conclusion that the family court abused its discretion in denying Dickson's motion to extend pretrial deadlines, as well as in sanctioning her, and subsequent remand is dispositive of the issues raised on application. Accordingly, we first turn to Weinberg's additional arguments with respect to Dickson's motion to extend pretrial deadlines.

## A. *Motion to Extend Pretrial Deadlines*

On direct appeal, the ICA held that the family court abused its discretion in denying Dickson any extension of pretrial deadlines and in, thereafter, precluding her from introducing evidence that she did not produce by those deadlines. *Weinberg,* 121 Hawai'i at 403, 220 P.3d at 266. In so holding, the ICA stated:

> In addition to refusing to grant [Dickson] an extension of pretrial deadlines, the family court sanctioned [Dickson] for failing to meet the deadlines by granting [Weinberg]'s motion to exclude all of [Dickson]'s expert witnesses, expert reports, trial exhibits, evidence not provided in discovery, and claims not raised by [Dickson] in her position statement. [Dickson] could therefore only defend her positions with very limited evidence and oral testimony and was severely prejudiced in adducing proof for her claims to the marital estate.

*Id.* at 435, 220 P.3d at 298. In supporting its holding, the ICA looked to cases from other jurisdictions and stated:

> Other courts have concluded that a trial court abuses its discretion when it fails to consider relevant factors before sanctioning a party for submitting statements or reports after a discovery deadline.
>
> . . . .

In *Kamhi v. Waterview Towers Condo. Ass'n,* 793 So.2d 1033, 1035 (Fla.Dist.Ct. App.2001), Waterview Towers Condominium Association (Waterview) filed an action for injunctive relief against Marjorie Kamhi (Kamhi), a condominium-unit owner, for violating a pet-control rule. The trial court set the matter for trial on February 21, 2000 and imposed various pretrial deadlines, including a December 10, 1999 deadline for submission of witness and exhibit lists. *Id.* Prior to the deadline, Kamhi's attorney filed a motion to withdraw due to irreconcilable differences, which was granted on December 13, 1999. *Id.* Kamhi's attorney did not file any witness and exhibit lists before the required deadline. *Id.* Kamhi's new counsel appeared at a January 11, 2000 status conference and moved to continue trial, but the trial court denied the motion. *Id.* On January 12, 2000, Waterview moved to compel Kamhi to file and serve her witness and exhibit lists that had been due on December 10, 1999. *Id.* Kamhi's second counsel agreed to file the lists no later than January 20, 2000. *Id.* However, without filing the lists, Kamhi's second counsel filed a motion to withdraw, which was granted. *Id.* Thereafter, the trial court sanctioned Kamhi by precluding her from presenting evidence or proffering testimony at trial. *Id.* at 1035–36. Kamhi then moved, *pro se,* for a continuance, claiming that she had found an attorney willing to represent her if she could get a continuance in order to accommodate the attorney's trial schedule. *Id.* at 1036. The trial court denied Kamhi's request and ordered that the case proceed as scheduled. *Id.* At trial, Kamhi was unable to present any evidence or proffer testimony in defense of Waterview's claim, and the trial court enjoined her from violating the pet-control rule. *Id.*

On appeal, the Florida District Court of Appeals reversed, stating:

When a party fails to comply with an order, the trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense. Although striking a party's pleadings is the most severe sanction, it is appropriate where the offending conduct is flagrant, willful or persistent. "A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." Absent evidence of a willful failure to comply or extensive prejudice to the opposition, however, the granting of such an order constitutes an abuse of discretion. It also has been found to be an abuse of discretion to strike pleadings where a litigant is punished for the failure of counsel, or where there is only a single failure to comply which did not result in extreme prejudice to the other side.

*Although the trial court in this case did not strike Kamhi's pleadings, its order prohibiting her from presenting evidence and proffering testimony was tantamount to the severest of sanctions.* In its motion for sanctions, Waterview never pled prejudice or any basis for sanctions which included the striking of Kamhi's answer, entering a default or preventing Kamhi from presenting evidence or testimony at trial. At no time did the court make any findings that Kamhi consciously and deliberately disregarded the trial court's order to submit her witness and exhibit lists or that she acted in bad faith. Moreover, her failure to timely comply with the court's order was more a failure by her attorneys. In each instance, Kamhi was still represented by counsel when she failed to timely serve her witness and exhibit lists.

*Id.* at 1036–37 (emphasis added[) (]citations omitted).

*Weinberg,* 121 Hawai'i at 435–37, 220 P.3d at 298–300. The ICA also discussed, *inter alia, Maddox v. Stone,* 174 Md.App. 489, 921 A.2d 912, 919–21 (Spec.App.2007) (holding that, in determining whether a discovery violation warrants the sanction of exclusion of evidence, a court must look to whether the violation was substantial, the timing of the violation, the reason for the violation, the degree of prejudice to the parties, whether such prejudice may be cured by a postponement, and the desirability of a continuance) and *Long v. Steepro,* 213 F.3d 983, 986 (7th Cir.2000) (holding that "[t]he choice of appropriate sanctions is primarily the responsibility of the district court," but that "the sanction selected must be one that a reasonable jurist, apprised of the circumstances, would have chosen proportionate to the infraction"). Relying on such cases and the record in the instant case, the ICA concluded that:

In this case, [Weinberg] did not object to a continuance of pretrial deadlines as long as the trial date remained the same. Nevertheless, the family court denied a continuance. There is no indication in the record that the family court weighed any factors in acting upon [Dickson]'s motion for a continuance of pretrial deadlines. Moreover, based on the family court's oral statements and the [FOFs]/[COLs], it appears that the family court, in denying [Dickson]'s motion to extend the pretrial deadlines, treated the deadlines as statutes of limitations, "chiseled in concrete," and therefore sanctionable if violated.

Scheduling orders are clearly valuable tools for promoting the efficient management of a trial court's docket. However, as the Maryland Court of Special Appeals recognized in *Maddox:*

[T]he imposition of a sanction that precludes a material witness from testifying, and, consequently, effectively dismisses a potentially meritorious claim without a trial, should be reserved for egregious violations of the court's scheduling order, and should be supported by evidence of willful or contemptuous or otherwise opprobrious behavior on the part of the party or counsel.

921 A.2d at 922. *See also Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 397 (Tex.App. 1994) (holding that discovery sanctions "so severe they prevent a trial on the merits are warranted only where the record reflects a party's flagrant bad faith or counsel's callous disregard for the discovery rules").

Based on our review of the record and the circumstances of the instant case, we conclude that the family court abused its discretion when it refused to extend any pretrial deadlines and thereafter sanctioned [Dickson] by precluding her from proffering evidence that was adduced in violation of the pretrial deadlines.

*Weinberg*, 121 Hawai'i at 438, 220 P.3d at 301.

On application, Weinberg generally argues that the ICA erred in reversing the family court's denial of Dickson's motion to extend pretrial deadlines because Dickson engaged in delaying tactics—which Weinberg alleges are indicated by voice mail messages entered into evidence [3]—and any further continuance would have prejudiced him. Related to his internal inconsistency argument, Weinberg argues that the ICA ignored the family court's FOFs and clearly erroneous standard of review. Weinberg further contends that the ICA's decision, which cites "inapposite cases from other jurisdictions," conflicts with Hawai'i case law "support[ing] the broad powers of trial courts to control the litigation before them." Specifically, he argues that the ICA's decision is inconsistent with *Glover v. Grace Pacific Corp.*, 86 Hawai'i 154, 948 P.2d 575 (App.1997), "where the ICA affirmed a trial court's decision to strike an expert witness because the expert had failed to furnish his final opinion before the discovery cutoff date."

In her response, Dickson argues that the ICA "properly concluded that the family court imposed sanctions so severe they prevented a trial on the merits, without considering a lesser sanction or finding that [Dickson] acted deliberately or in bad faith." She

also asserts that Weinberg "grossly exaggerates the import of the family court's [FOFs] by claiming they found [Dickson] intended to delay the court proceedings by obtaining a continuance," when, in fact, there is no indication in the FOFs or COLs that she intentionally delayed this case or acted in bad faith. (Internal quotations omitted.) Dickson indicates her agreement with the ICA's reversal based on the family court's treatment of the pretrial deadlines as "statutes of limitations" and submits that it is an abuse of discretion when a trial court fails to consider other relevant factors before sanctioning a party for submitting documents after a deadline. We first turn to address Weinberg's argument that the ICA "ignored" the family court's FOFs and, instead, "assumed" certain facts.

Specifically, Weinberg states:

In the ICA's opinion, four *assumed* "facts" are recited to support the ICA's conclusion that the [f]amily [c]ourt abused its discretion: (1) Dickson had no attorney from December 14, 2005 until January 2006 and needed a continuance to complete discovery; (2) [t]he case was complex and voluminous; (3) [Purcell] had a conflict on the trial date and much work still needed to be done; and (4) Dickson was financially unable to retain new counsel until funds Weinberg had been ordered to pay were released by the [family c]ourt.

In direct contradiction to the ICA's *assumed* facts, the *actual record* shows: (1) Dickson announced *her* intent to *fire* [Cuskaden] as early as November[ ] 2005; (2) [h]er threats to deliberately delay trial were admitted into evidence as tape recorded voicemail messages; (3) Cuskaden's [a]ffidavit in support of his motion to withdraw also described Dickson's disregard of court orders and his advice; (4) Dickson never submitted an affidavit, declaration, or testimony describing any effort to retain a new attorney; (5) Dickson managed to retain *seven* different attorneys, contrary

---

3. Weinberg references voice mail messages left by Dickson between November and December 2005 in which Dickson stated, *inter alia*, that: (1) she was seeing a psychiatrist and was not well enough to go through with trial; (2) she did not

want to continue with her current attorney, Everett Cuskaden; (3) she wanted Weinberg to "let go of her life" and "let [her] go home"; and (4) "[t]he marriage just keeps getting longer and longer."

to her claims of having difficulty retaining attorneys; (6) [d]etailed discovery had been done; (7) Purcell failed to provide a declaration detailing her alleged conflicts and delayed filing a [m]otion to [c]ontinue [t]rial for over a month, during a critical time period; and (8) [i]n November ... and December[ ] 2005, Dickson received $6,000 a month in spousal support and deposited $72,089.71 into personal accounts while residing at the Royal Hawaiian Hotel and enjoying a multi-thousand dollar shopping spree.

(Emphases in original.) (Internal citations omitted.)

Preliminarily, we observe that the four "assumed 'facts'" referred to by Weinberg are described in the ICA opinion; however, they are stated as a summary of the arguments advanced by Dickson. Specifically, the ICA stated:

In seeking a continuance of trial in this case, [Dickson] argued, in summary, that (1) she did not have an attorney during a crucial time period between December 14, 2005 and late January 2006 and needed a continuance to complete discovery, retain experts, and prepare for trial; (2) her case was complex and the files were voluminous for a new attorney to sort through; (3) the attorney whom she wished to retain could not begin trial preparation without a continuance because the attorney had a conflict on the scheduled trial date and had ascertained from a preliminary review of Wife's files that much work remained to be done to be ready for trial; and (4) [Dickson] could not retain an attorney or a business evaluator until the family court released the $40,000.00 that [Weinberg] had deposited into court to cover her attorney's fees and costs.

*Weinberg,* 121 Hawai'i at 438–39, 220 P.3d at 301–02. Although acknowledging Dickson's arguments in support of her contention that the family court abused its discretion in denying her request for a continuance of the trial date, the ICA—more importantly—then indicated:

Our conclusion that the family court abused its discretion in refusing to extend pretrial deadlines and in sanctioning [Dick-

son] for missing the deadlines *renders it unnecessary to address* [Dickson's] contention that the family court abused its discretion in failing to continue the trial date.

*Id.* at 439, 220 P.3d at 302 (emphasis added). Clearly, not only did the ICA *not* "assume[ ] facts,'" it never even considered Dickson's arguments inasmuch as its prior conclusion with respect to the pretrial deadline issue was dispositive.

Next, we address whether the family court abused its discretion in denying Dickson's motion to extend pretrial deadlines and, thereafter, precluding her from submitting any evidence at trial that was not produced during discovery.

Hawai'i Family Court Rules (HFCR) Rule 16 (2000) states in relevant part that "[t]he [family] court *in its discretion may* establish a pretrial calendar on which actions may be placed for consideration[.]" (Emphasis added.). Further, trial courts have broad powers to control the litigation process before them, including the presentation of evidence. *See Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994). In *Richardson,* this court stated that:

Among courts' inherent powers are the powers "to create a remedy for a wrong even in the absence of specific statutory remedies[,]" and *"to prevent unfair results."* The courts also have inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence and may include dismissal in severe circumstances. It follows that if the trial court has the inherent power to level the "ultimate sanction" of dismissal, it necessarily *has the power to take all reasonable steps short of dismissal, depending on the equities of the case.*

*Id.* at 507, 880 P.2d at 182 (citations omitted) (emphases added). As pointed out by the ICA,

the trial court has a broad spectrum of sanctions to impose, although *the sanction chosen must be commensurate with the offense.* Although striking a party's pleadings is the most severe sanction, it is appropriate where the offending conduct is

flagrant, willful or persistent. "A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." *Absent evidence of a willful failure to comply or extensive prejudice to the opposition, however, the granting of . . . an order [striking a party's pleadings] constitutes an abuse of discretion.*

*Weinberg*, 121 Hawai'i at 437, 220 P.3d at 300 (citing *Kamhi*, 793 So.2d at 1036) (emphases added); *see also Maddox*, 921 A.2d at 919 (stating that "the more draconian sanctions[ ] of dismissing a claim or precluding the evidence necessary to support a claim[ ] are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court."); *United States v. Mavrokordatos*, 933 F.2d 843 (10th Cir.1991). Accordingly, the imposition of a sanction—in this case, precluding Dickson from submitting any evidence not previously disclosed—requires "an analysis of the relevant facts and circumstances that resulted in the exercise of discretion." *Maddox*, 921 A.2d at 919.

▬ Here, the record indicates that, after a failed attempt at mediation, Dickson made several requests to extend the pretrial deadlines, as evinced by: (1) Dickson's *pro se* January 11, 2006 motion to cancel trial, which was never set for hearing; (2) her February 24, 2006 motion requesting a continuance of trial (set for March 2006) and pretrial deadlines (which had already expired), which was denied; as well as (3) her April 4, 2006 motion to extend pretrial deadlines, which was also denied. The record further indicates that, throughout the pretrial proceedings, Dickson was frequently without counsel, had no continuous representation, and was constantly unable to pay her attorneys' fees.

Although Weinberg argues that Dickson employed "delaying tactics" throughout the proceedings, his only support for such allegation was the voice mail messages Dickson left for him in late 2005, in which Dickson told him to "let go of her life" and "let [her] go home," and that "[t]he marriage just keeps getting longer and longer." Dickson's voice messages—contrary to Weinberg's assertions—tend to demonstrate Dickson's desire to end the marriage (as opposed to prolonging it) and to get on with her life in California. Weinberg fails to point to anything in the record to support his bald assertion that Dickson acted in "bad faith," "willful[ly] disregard[ed]" an order of the court, or conducted herself in a way that evinces "deliberate callousness[,]" *Kamhi*, 793 So.2d at 1036, *and the family court made no findings that to that effect.*

Despite the lack of FOFs, COLs, or any evidence in the record that Dickson acted in bad faith or willfully disregarded the court's authority, the family court denied Dickson's motion to extend pretrial deadlines and, thereafter, sanctioned her for failing to meet the deadlines by granting Weinberg's motion in limine. The family court's ruling effectively precluded Dickson from presenting any expert witnesses and reports, as well as other documentary evidence, including the thirty-two exhibits she brought with her on the morning of trial.[4] In support of its ruling and sanction, the family court cited the financial prejudice that would result to Weinberg from any further continuances; however, it appears that the family court failed to consider the prejudice that the aforementioned sanctions would have on *Dickson.* Indeed, the prejudice to Dickson resulting from her inability to secure experts and present any documentary evidence at trial was tantamount to entering a default against her. Given the severity of such a sanction, without any finding, conclusion, or evidence in the record that Dickson acted willfully and in bad faith, the ICA was correct in concluding that the family court abused its discretion in refusing to extend the pretrial deadlines.[5]

---

4. We note that Dickson did present two witnesses at trial—one who testified about sharing fees with Weinberg and another who testified as to his role in drafting the IRA agreement.

5. Relatedly, Weinberg argues that the ICA ignored the clearly erroneous standard in vacating the FOFs. The family court's FOFs are reviewed on appeal under the clearly erroneous standard—*i.e.,* whether (1) the record lacks substantial evidence to support the challenged findings,

▉ Without reiterating the ICA's analysis in its entirety, we agree with the ICA that "the sanction chosen must be commensurate with the offense" and "should be supported by evidence of willful or contemptuous or otherwise opprobrious behavior" and that the family court "treated the [pretrial] deadlines as statutes of limitations, 'chiseled in concrete,' and therefore sanctionable if violated." Absent any evidence of bad faith on the part of Dickson, we believe the prejudice to Dickson outweighed any financial prejudice to Weinberg that may have resulted from a continuance of the trial date and the attendant extensions of the various pretrial deadlines. Indeed, lesser sanctions—such as monetary sanctions against Dickson for costs resulting from delays due to a continuance that were suffered by Weinberg—may have been more commensurate with the offense. *See Kamhi*, 793 So.2d at 1036; *see also W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co.*, 8 Haw.App. at 362, 802 P.2d at 1207 (listing "the availability of less drastic sanctions" as one of five factors considered by an appellate court when reviewing whether a trial court abused its discretion in issuing sanctions). Consequently, on remand, the family court should determine what, if any, lesser sanctions would be appropriate.[6]

Finally, Weinberg argues, as previously indicated, that the ICA's opinion is inconsistent with *Glover*, wherein the ICA reviewed the issue whether the trial court abused its discretion in striking an expert witness because the expert, without explanation, had failed to furnish his final opinion before the discovery cutoff date. 86 Hawai'i at 164, 948 P.2d at 585. In *Glover*, the expert produced documents pursuant to a subpoena duces tecum four days after the discovery deadline but such documents did not contain his final opinions pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 34 (1997) (governing production of documents during discovery). *Id.* A week after the expert produced the documents, the expert indicated at his deposition that he still had not reached his final opinion. *Id.* Consequently, the trial court struck from the witness list the expert that failed to comply. *Id.*

On direct appeal, Glover challenged this sanction, among other things. *Id.* Addressing the issue, the ICA held that,

> [i]n this context, we believe that the fair import of the policies underlying the discovery cutoff date is that an expert should have arrived at his or her final opinions by that date. Otherwise, the party seeking discovery of such opinions would be prevented from adequately preparing for trial. As a result, the [trial] court could determine that [the expert's] failure to furnish his final opinion before the discovery cutoff date constituted Glover's undue interference with the orderly pretrial procedures of the court under [Rules of the Circuit Court of Hawai'i (]RCCH[)] Rule 12(t) [ (2007) ("Failure of a party or his attorney to comply with any section of this rule is deemed an undue interference with orderly procedures and unless good cause is shown, the court may, in its discretion, impose sanctions.") ]. We conclude, then, that the court acted within its discretion when it entered the economic loss order striking [the expert] as a witness.

*Id.*

*Glover*, in our view, is distinguishable from the instant case because the striking of *one* expert witness—whose value to the outcome of trial was unknown inasmuch as neither the trial court nor the parties knew what the expert's as yet unfurnished final opinion would have been—does not have the same effect of essentially barring *nearly an entire*

---

or (2) despite substantial evidence in support of the challenged findings, this court is nonetheless left with a definite and firm conviction that a mistake has been made. *In re Jane Doe*, 101 Hawai'i at 227, 65 P.3d at 174. Although the ICA did not engage in the requisite clearly erroneous analysis, such analysis is, in our view, implicit in the ICA's analysis. In other words, implicit in the ICA's conclusion that the harsh sanctions imposed on Dickson by the family court extensively prejudiced her (and, essentially, outweighed the prejudice to Weinberg) is that the relevant FOFs to the contrary are clearly erroneous.

6. If the family court decides that monetary sanctions against Dickson for costs resulting from delays are appropriate, then, Weinberg should be allowed an opportunity to provide the family court with such information.

*body of evidence*, as in this case. Because the sanctions levied in the instant case were far harsher than that imposed in *Glover*, we believe, contrary to Weinberg's view, that the ICA's opinion is not inconsistent with *Glover*.[7]

Based on the foregoing, we conclude that the ICA did not err in vacating the FOFs/COLs and remanding the case for further proceedings. However, even though the ICA concluded that the family court's failure to extend pretrial deadlines "render[ed] it unnecessary to address [Dickson]'s remaining issues on appeal," the ICA went on to address—for purposes of providing "guidance on remand"—Dickson's contention that the family court incorrectly valued Weinberg's law practice in section G. of the "Discussion," as well as opined regarding the validity of a premarital individual retirement account (IRA) agreement (which was never admitted into evidence) in section C. of the "Discussion."

Because the FOFs/COLs have been properly vacated, the family court, on remand, will inevitably enter new findings and conclusions based on the evidence presented at the new trial. Thus, any further analysis with respect to Weinberg's law practice and the premarital IRA agreement [hereinafter, collectively, the "guidance" issues] was premature and speculative. Keeping the foregoing in mind, we now turn to specifically address Weinberg's contentions on application with respect to those issues.

### B. *Weinberg's Remaining Contentions*

#### 1. Valuation of Weinberg's Pending Contingency Fee Cases

▮ At trial, evidence was presented via expert testimony regarding the valuation of

Weinberg's law firm for the purposes of dividing the couple's marital property. In making its decision, the family court did not consider Weinberg's contingency fee cases that remained pending since Weinberg filed for divorce. *Weinberg*, 121 Hawai'i at 447–48, 220 P.3d at 310–11. On appeal, Dickson argued that the family court erred when it grossly undervalued Weinberg's law firm by refusing to consider his pending unliquidated contingency fee cases. In reviewing Dickson's contention, the ICA held that, as a matter of first impression, an attorney spouse's contingency-fee cases are marital property subject to division. *Weinberg*, 121 Hawai'i at 448, 220 P.3d at 311. More specifically, the ICA concluded that it would be proper for the family court to estimate the value of Weinberg's unliquidated contingency-fee cases using methodology set forth in a treatise relating to valuation of specific assets in divorce. *Id.* at 450, 220 P.3d at 313.

On application, Weinberg argues that the ICA erred in the approach it adopted for the valuation of an attorney's contingency fee cases inasmuch as it "ignored Hawai'i law and relevant case law from other jurisdictions" and instead "adopted an approach taken from a treatise, an approach no other state has adopted." Specifically, Weinberg contends that: (1) "the ICA fashioned an unworkable approach, not grounded in reality, that will have the disastrous effect of adding years to the duration of litigation, multiplying the expense of litigation, fostering inequity and injustice, and increasing the number of appeals," which would "not be limited to contingent fee cases[ ] but would apply to all situations where there could be financial gain after the date of divorce"; and

---

7. Weinberg also argues that the ICA "failed to cite a single Hawai'i case on the consequences of missed pre-trial deadlines" and, instead, "erroneously relied on *Long* [.]" In *Long*, the trial court *sua sponte* dismissed an action brought by the plaintiff against prison employees because the plaintiff failed to file his evidentiary lists by the deadline set in a scheduling order. 213 F.3d at 985. The plaintiff appealed, essentially arguing that this was too harsh of a sanction. *Id.* The Seventh Circuit Court of Appeals held that the trial court abused its discretion in imposing dismissal as a sanction, stating that "the interests of justice are best served by resolving cases on their

merits," and, thus, "the sanction of dismissal with prejudice must be infrequently resorted to by district courts in attempting to control their dockets and extirpate nuisance suits." *Id.* at 986 (citations and internal quotation marks omitted). We disagree with Weinberg that *Long* is inapposite. In the instant case, Dickson was not only severely hampered in defending her position with very limited evidence and oral testimony, she was effectively precluded from producing any evidence to prove her claims to the marital estate. As such, any affirmative claims she may have pursued—like the plaintiff in *Long*—were essentially dismissed.

(2) "the ICA's newly created approach is ... profoundly unfair in that it fails to account for the individual nature of pending cases."

Inasmuch as the ICA recognized, and we agree, that it was "unnecessary to address" the contingency fee issue based on its conclusion with respect to the pretrial deadlines and related sanctions, the ICA's discussion regarding the contingency fee issue was premature. Additionally, the ICA based its entire analysis on the *assumption* that the facts will remain the same on remand, which—based on the ICA's vacatur of the FOFs, requiring *new* FOFs—is highly unlikely. Therefore, the ICA's discussion of the contingency fee issue was also speculative.

### 2. The IRA Agreement

■ At trial, Dickson testified that she spoke with Weinberg about an agreement for the division of his IRAs, and her understanding was that, in the event that the couple divorced, she was to get half of his IRAs, annuities, Charles Schwab securities accounts, and the 401(k)s. According to Dickson, "[t]here were no contingencies." On cross-examination, Weinberg testified that he had never unconditionally agreed to give Dickson one-half of his IRAs. Rather, he asserted, Dickson was concerned about being exposed to his tax liability and about not being reimbursed for monies advanced by her from her personal bank account and, thus, he made an agreement with her to protect her with one-half of his IRAs *if he did not reimburse her.* Both parties testified that Dickson was reimbursed for all of the monetary advances she had made. Because Dickson was precluded from introducing her exhibits at trial, the actual IRA agreement was not admitted, and the family court specifically declined to consider it.

On appeal, Dickson argued, *inter alia,* that the family court erred when it refused to enforce an IRA agreement that would award her one-half of Weinberg's IRAs inasmuch as the family court (1) abused its discretion, as

discussed *supra,* in excluding the agreement from evidence, and (2) had no authority to impose conditions on a written agreement based on parol evidence. The ICA recognized that "[its] conclusion that the family court abused its discretion in failing to extend pretrial deadlines is dispositive of [Dickson]'s claim that the family court erred in refusing to enforce the IRA [a]greement on the basis of [Dickson]'s failure to provide the IRA [a]greement to [Weinberg] by the deadline set forth in Pretrial Order No. 1." *Weinberg,* 121 Hawai'i at 432, 220 P.3d at 295. Nevertheless, the ICA reviewed the record and the parol evidence rule and held, *inter alia,* that "[t]he IRA [a]greement clearly and unambiguously provided that [Dickson] would get one-half of four of [Weinberg]'s IRAs in the event of divorce" and, inasmuch as "the family court did not determine that the IRA [a]greement was unconscionable, abandoned, or entered into pursuant to fraud[,] it was improper for the family court to allow [Weinberg] to testify about conditions outside the four corners of the IRA [a]greement that would render the IRA [a]greement unenforceable." *Id.* at 433, 220 P.3d at 296.

On application, Weinberg argues that: (1) Dickson failed to raise the alleged IRA agreement in her answer to the complaint as a "defense, in law or fact, to a claim for relief," as required by HFCR 12(b); and (2) the IRA agreement was never admitted into evidence, is not part of the record, and should not have been reviewed by the ICA.[8] Weinberg additionally asserts that the ICA erroneously held that the family court erred in allowing Weinberg's testimony as to the conditions precedent to the IRA agreement because such testimony was barred by the parol evidence rule inasmuch as (1) Dickson not only failed to object to the admission of such evidence but affirmatively elicited it during her cross-examination of Weinberg and (2) evidence of conditions precedent to a contract, pursuant to the Restatement (Sec-

---

8. As correctly pointed out by Weinberg, the IRA agreement, which was appended as an exhibit to Dickson's opening brief, was not reviewable inasmuch as the agreement was not admitted into evidence and, therefore, was not part of the record. *See* HRS § 641–2 (1993) ("Every appeal shall be taken on the record[,] and no new evidence shall be introduced in the [appellate] court.")

ond) of Contracts § 217[9] is a well-recognized *exception* to the parol evidence rule.[10]

 As stated above, the ICA recognized the pretrial deadline issue to be dispositive, but, nevertheless, continued with its analysis as to the IRA agreement and the parol evidence rule. Such analysis appears to have been based on an assumption by the ICA that the written IRA agreement, which was barred from evidence in the instant case, would be presented by Dickson and admitted into evidence on remand. However, whether Dickson will comply with the pretrial deadlines on remand and offer the IRA agreement as evidence and whether the family court will admit the IRA into evidence are merely speculative. Because the parol evidence rule—which bars the testimony of prior or contemporaneous negotiations and agreements that vary or alter the terms of a *written instrument, Cosmopolitan Fin. Corp. v. Runnels,* 2 Haw.App. 33, 625 P.2d 390 (1981)—will only apply on remand if the actual IRA agreement instrument is admitted into evidence, it was premature for the ICA to address this issue.

9. Restatement (Second) of Contracts § 217 states that, "[w]here the parties to a written agreement agree orally that performance of the agreement is subject to ... a stated condition, the agreement is not integrated with respect to the oral condition."

10. We note that Weinberg additionally argues that the ICA gravely erred in "vacating the FOFs/

## IV. CONCLUSION

Based on the foregoing, we agree with the ICA that the family court abused its discretion with respect to the pretrial deadlines and sanctions barring Dickson's evidence. Thus, on remand, the family court should determine what, if any, lesser sanctions would be appropriate. In so doing, the family court should also, if appropriate, allow Weinberg to provide information regarding costs suffered by him as a result of the delays.

We also believe that the ICA erred when it engaged in additional analysis based in part on its speculation as to the facts that will be adduced on remand. Therefore, we vacate section C. (relating to the IRA agreement) and section G. (relating to Weinberg's law practice) of the "Discussion" in the ICA's opinion and affirm in all other respects.

COLs regarding the IRA agreement" and "ignored clear legal authority and the [f]amily [c]ourt's finding that Weinberg was the more credible party." Inasmuch as these arguments, again, relate to Weinberg's unfounded "internal inconsistency" argument, we do not address them further.