**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000484
23-AUG-2024
08:03 AM
Dkt. 66 SO**

NO. CAAP-20-0000484


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


HAWAII PETROLEUM, INC., A HAWAII CORPORATION,
Plaintiff-Appellant,
v.
MILLENNIUM HI CARBON, LLC, A HAWAII LIMITED
LIABILITY COMPANY, DAVID LESSER AND JON MAURER,
Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO.  3CC18100061K)


SUMMARY DISPOSITION ORDER
(By:  Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

This appeal arises out of a dispute over whether two fuel storage tanks putatively owned by Plaintiff-Appellant Hawaii Petroleum, Inc. (**HPI**) at Big Island Carbon LLC's (**BIC**) facility in Kawaihae, Hawaiʻi, pursuant to 2010 and 2011 agreements in which BIC purchased petroleum products from HPI (**Purchase Agreements**), were included in a 2015 bankruptcy sale of BIC's assets.  Defendants-Appellees Millennium HI Carbon,

LLC, David Lesser, and Jon Maurer (collectively, **Millennium**)[1] assert that Millennium bought the tanks in the bankruptcy sale. HPI filed a Complaint to recover the tanks, contending that the tanks belonged to HPI, were not part of BIC's bankruptcy estate, and were not included in the sale to Millennium. We vacate the order denying HPI summary judgment and granting Millennium summary judgment. We remand for entry of summary judgment for HPI, where HPI's evidence established, as a matter of law, that its tanks were never the property of the bankruptcy estate.

HPI appeals from the (1) March 24, 2020 "Findings of Fact, Conclusions of Law [(**FOFs/COLs**)] and Order Denying [HPI]'s Motion for Summary Judgment Against [Millennium] [(**MSJ**)] and Granting [Millennium's] Cross Motion for Summary Judgment [(**Cross-MSJ**)]" (**Order Denying HPI's MSJ and Granting Millennium's Cross-MSJ**); and (2) July 28, 2020 Final Judgment, both filed and entered by the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, HPI raises three points of error, contending that the Circuit Court erred by (1) granting Millennium's Cross-MSJ because Millennium did "not own HPI's tanks"; (2) denying HPI's MSJ because HPI was entitled to "a writ of replevin to recover possession of its two tanks"; and (3) granting Millennium's attorneys' fees and costs.[3]

---

[1]  David Lesser is the manager of Millennium, and Jon Maurer is a Millennium employee.

[2]  The Honorable Robert D.S. Kim presided.

[3]  HPI also challenges COLs 2, 3, and 5, and appends an "Error Chart" highlighting challenged portions of FOFs 5-10, 12, 17-18, 20-23, 33-35, 38-47, 49, 50, 52-65 and COLs 2-6, 9-16, 18-22. In light of our disposition vacating the Order Denying HPI's MSJ and Granting Millennium's Cross-MSJ, we need not address these challenges.

Upon review of the record on appeal and briefs submitted by the parties, giving due consideration to the arguments advanced and the issues raised, we vacate and remand.

The record of the summary judgment hearing reflects the following.  The 2010 Purchase Agreement between HPI and BIC concerned, inter alia, the installation of HPI's 12,000-gallon diesel fuel storage tank (**Fireguard Tank**), to store bulk fuel that BIC planned to purchase from HPI.  The 2010 Purchase Agreement granted BIC ownership of all improvements and equipment "except for title and ownership of the [Fireguard] Tank" that would "remain the sole property of HPI"; specified that bankruptcy would constitute a default; and provided remedies in the event of BIC's default, including removal of the Fireguard Tank, as follows:

**SECTION ONE**
**BULK FUEL TANKS AND TANK MONITORING AND SENSOR COST**

Subject to the terms and conditions set forth herein HPI will supply one of its 12,000 gallon aboveground diesel fuel tanks with stairs for use on the Premises by [BIC] during the term of this Agreement ("HPI [Fireguard] Tank")
. . . .

. . . .

**SECTION SIXTEEN**
**OWNERSHIP OF IMPROVEMENTS**

Upon the completion of the Bulk Fuel Tanks Project by HPI as set forth in this Agreement[,] [BIC] will receive ownership of all of said improvements and equipment (except for title and ownership of the HPI [Fireguard] Tank and stairs which remain the sole property of HPI.) installed by HPI including all the, [sic] hoses, piping, concrete, and any and all materials and equipment installed on the Premises by HPI as set forth in this Agreement. . . .

. . . .

**SECTION TWENTY-SIX**
**EVENTS OF DEFAULT**

This Agreement may be terminated by HPI for default upon 10 days advanced written notice to [BIC]. <u>Default includes</u>, but is not limited to, the following:

. . . .

D. <u>[BIC] becomes insolvent or commits an act of bankruptcy</u> or takes advantage of any law for the benefit of debtors or [BIC's] creditors, or if a receiver is appointed for [BIC]; or

. . . .

**SECTION TWENTY-SEVEN**
**REMEDIES**

If an event of default occurs, HPI may, but shall not be required to, exercise any one or more of the remedies listed in subparagraphs A through C below in addition to remedies for breach of contract, loss of profits, injunctive relief or other remedies as provided for by law:

A. Collect from [BIC] [specified fees].

B. Exercise or pursue any remedy or cause of action permitted by this Agreement or applicable law.

C. Terminate this Agreement. Termination of this Agreement for any reason shall not relieve the parties of any obligation theretofore accrued under this Agreement.

D. <u>Remove the HPI [Fireguard] Tank</u> and stairs <u>from the Premises</u>.

(Emphases added.)

The 2011 Purchase Agreement between HPI and BIC concerned, inter alia, the loan of a 280-gallon oil tank (**Oil Tank**) owned by HPI for storage of petroleum products BIC planned to purchase from HPI.  The 2011 Purchase Agreement provided that HPI would retain title to the loaned equipment, which included the Oil Tank, as follows:

2. **Sale of Petroleum and <u>Loan of Equipment</u>**.

. . . .

(b) <u>[HPI] shall lend to [BIC] certain equipment (the "Loaned Equipment")</u> more fully set forth in the

4

Equipment Schedule attached hereto and incorporated
herein. Such Loaned Equipment shall be used solely
for the storage and dispensing of petroleum products
purchased from [HPI] hereunder.

. . . .

(iii) [HPI] shall retain title to the Loaned
Equipment at all times during the life of
this Agreement . . . .

(Emphases added.)  The list of loaned equipment attached as
"Exhibit A" to the 2011 Purchase Agreement referenced the
Oil Tank.

On November 5, 2012, BIC filed for Chapter 7
Bankruptcy in the United States Bankruptcy Court.  In the
bankruptcy proceeding, HPI was among the "List of Creditors" of
BIC, the debtor.

On February 27, 2014, the bankruptcy court issued an
order permitting the retention of a sale agent and approving the
"Agency and Sale Agreement" between the bankruptcy trustee and
the sale agent (**Order Approving Agency and Sale Agreement**).  The
trustee retained the agent "to assist in the sale of the turnkey
operation and/or piecemeal machinery, equipment and support
equipment, as listed on the attached Exhibit A (individually an
'Asset' and collectively the 'Assets') of [BIC] [(**List of Assets
for Sale**)]."  The List of Assets for Sale did not include the
Fireguard Tank and the Oil Tank at issue in this appeal.

On May 21, 2015, the bankruptcy court approved the
sale of "substantially all assets of [BIC]" to Millennium, in
its "Sale Order (I) Authorizing and Approving the Sale of All of
[sic] Substantially All of [BIC]'s Assets Free and Clear of
Liens, Claims, Encumbrances and Other Interests to [Millennium],
and (II) Granting Related Relief" (**Bankruptcy Sale Order**).  The
Bankruptcy Sale Order approved the "Asset Purchase Agreement"
(**APA**) between the trustee of BIC's bankruptcy estate and

5

Millennium; ordered that any entities failing to timely object to the sale "are deemed to have consented"; ordered that the Bankruptcy Sale Order and the APA "shall be binding in all respects upon [BIC]'s estate, its creditors . . . [and] Millennium"; enjoined "all persons and entities," including creditors holding claims "in [BIC]'s interest in the Assets" from pursuing any claim against Millennium; and provided that "[f]ollowing the Closing Date, no holder of a Claim on or against [BIC] or the Assets shall interfere with Millennium's title to or retrieval, use and enjoyment of the Assets" based on such claim.  The APA defined "Assets" as "all of the Debtor's owned assets . . . related to the Business wherever located," as follows:

> **Section 1.1  Assets**. Subject to the terms and conditions set forth herein, at the Closing the Seller [(bankruptcy trustee)] shall sell, transfer, assign and deliver to the Purchaser [(Millennium)], and the Purchaser shall purchase from the Seller, all of the Seller's right, title and interest on an "as is where is" basis free and clear of liens, claims and encumbrances (other than Assumed Liabilities as defined herein and permitted encumbrances) all of the Debtor's [(BIC)] owned assets, property and contractual rights related to the Business wherever located, including but not limited to the below listed items (collectively, the "Assets"):
>
> > (a) All equipment owned by the Debtor used or held for use in the operation of the Business (the "Equipment"). A listing of the Equipment, to the best of the Seller's knowledge, is attached hereto as Exhibit A;
>
> . . . .

(Emphases added) (footnote omitted).  The attached list of equipment assets, entitled "The Purchased Equipment" (**List of Purchased Equipment**), contained a photo and description of each item or items depicted in the photos.  The List of Purchased Equipment did not contain the Fireguard Tank and Oil Tank at issue in this appeal.

On April 3, 2018, HPI filed a Complaint in the underlying action against Millennium, alleging that, regarding

the Fireguard Tank and Oil Tank, HPI was entitled to "Replevin" in Count 1;[4] replevin under the Hawaiʻi Uniform Commercial Code (**UCC**), HRS § 490:2A-521[5] in Count 2; and loss of use damages in Count 3.  HPI alleged that "[t]he Fireguard Tank and Oil Tank were not part of the assets of BIC and remain the property of HPI throughout the bankruptcy proceeding."

Following the 2018 Complaint, a December 13, 2019 filing in the bankruptcy court entitled "Trustee's Report of Sale," reported the bulk sale of the Kawaihae, Hawaiʻi facility for $1,280,000.00 to Millennium, and described the assets as follows:

---

[4]    While not indicated in the Complaint, the record of the summary judgment hearing reflects that HPI's claim of replevin in Count 1 was based on Hawaii Revised Statutes (**HRS**) § 654-1 (2016), which permits the filing of an action "to secure the immediate possession of personal property in any court of competent jurisdiction" by the filing of a verified complaint showing (1) the plaintiff's entitlement to "immediate possession of the property claimed"; (2) a property description; (3) value; (4) that the property has not been taken for tax, fine or assessment; (5) "[t]hat the property is in the possession of a named defendant, and the facts and circumstances relating to the possession thereof by the defendant, according to the plaintiff's best knowledge and belief"; and (6) names of any persons who may claim an interest in the property.

[5]    HRS § 490:2A-521 (2008), entitled "Lessee's right to specific performance or replevin," states:

> (a) Specific performance may be decreed if the goods are unique or in other proper circumstances.
>
> (b) A decree for specific performance may include any terms and conditions as to payment of the rent, damages, or other relief that the court deems just.
>
> (c) A lessee has a right of replevin, . . . for goods identified to the lease contract if after reasonable effort the lessee is unable to effect cover for those goods or the circumstances reasonably indicate that the effort will be unavailing.

7

> Bulk sale of <u>entire</u> Biomass <u>Power Plant and</u> Activated Carbon Processing <u>facility including all machinery and equipment</u>, office furniture and fixtures, motor vehicles used in the operation of the business and all inventory of supplies, parts and accessories.

(Emphases added.)

### HPI's Motion for Summary Judgment

On January 8, 2020, HPI filed its MSJ, arguing that Millennium "did not acquire any ownership interest in the Fireguard Tank and Oil Tank" from the sale of BIC's assets; that Millennium had not purchased any petroleum products from HPI since August 16, 2017 as required by the 2010 and 2011 Purchase Agreements for the tanks to continue to remain at the Kawaihae, Hawaiʻi facility; and that HPI was entitled to immediate possession of the tanks and loss of use damages. In support of its MSJ, HPI attached an affidavit of HPI's President and a declaration from its Vice President of Operations attesting to HPI's ownership of the tanks, and attached the 2010 and 2011 Purchase Agreements.

### Millennium's Memorandum in Opposition and Cross Motion for Summary Judgment

On February 2, 2020, Millennium filed its Opposition and Cross-MSJ, arguing that: HPI's replevin claim was frivolous because it was preempted by federal bankruptcy law; HPI's Complaint was untimely due to the four-year statute of limitations to assert a claim under the UCC; and HPI was not entitled to damages. Millennium's exhibits included, inter alia: the List of Creditors filed in the bankruptcy court that included HPI; the "Limited Objection" filed in the bankruptcy court by another entity, AmeriGas Propane, L.P. (**AmeriGas**), which had a contract with BIC similar to HPI's Purchase

Agreements with BIC;[6] the 2014 Order Approving Agency and Sale Agreement; the 2015 Bankruptcy Sale Order with the APA; and the 2019 Trustee's Report of Sale.

Following a February 11, 2020 hearing, the Circuit Court took the matter under advisement, and subsequently issued its March 24, 2020 FOFs/COLs and Order Denying HPI's MSJ and Granting Millennium's Cross-MSJ, which contained 65 FOFs and 22 COLs that concluded, inter alia, that: to the extent HPI proved a prima facie case of replevin, Millennium met its burden of proof in opposition by showing it had "a special right to the Fireguard Tank and the Oil Tank, having acquired the tanks and all Assets at the Hawaii Plant for a 'turn-key,' not piece-meal purchase, free and clear of all liens or claims of HPI" through the bankruptcy proceeding;[7] that HPI's replevin claim was

---

[6] Under AmeriGas's similar contract with BIC, AmeriGas provided and retained ownership of a propane tank and related equipment on BIC's premises, and BIC was "obligated to purchase propane from AmeriGas at certain specified prices." AmeriGas's Limited Objection stated that "[BIC] cannot sell assets that are not property of its estate"; acknowledged that "it does not appear that the Trustee is attempting to sell the Tank, which he has no authority to do since the Tank is not an estate asset"; explained that it was objecting to the sale "out of an abundance of caution, . . . to the extent that the Trustee is in fact attempting to include the Tank as part of any sale"; requested permission for AmeriGas to "take back possession of its Tank" in the event there was no sale agreement; and requested that any order approving a sale contain language that: "the Assets shall not include any property owned by [AmeriGas], which includes, without limitation" the tank at issue. The Bankruptcy Sale Order included AmeriGas's requested language.

[7] The Circuit Court applied the analysis for replevin under HRS § 654-1 set forth in Kahawaiolaa v. Hawaiian Sun Invs., Inc., No. CAAP-17-0000317, 2019 WL 2384796 (Haw. App. June 6, 2019) (SDO), a non-published disposition by this court. On certiorari, the Hawai'i Supreme Court explained how HRS § 654-1 codified replevin into a statute with the following requirement:

> [I]n an action in replevin the burden is upon the plaintiff to show that he is entitled to immediate and exclusive possession of the property claimed. Once a plaintiff establishes a prima facie case of entitlement to possession, the burden shifts to the defendant to prove that the defendant has a special right to title or possession of the property.

preempted, waived and/or abandoned due to HPI's failure to raise its claim to the tanks in bankruptcy court; and that the UCC replevin claim was barred by the four-year statute of limitation and thus was "frivolous" and "untimely."  HPI timely appealed the July 28, 2020 Final Judgment.

This court reviews an award of summary judgment de novo under the same standard applied by the lower court.  Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 12, 346 P.3d 70, 81 (2015) (citing Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party.

Id. (cleaned up).

**The Circuit Court erred, where HPI established its entitlement to summary judgment on its replevin claim, and Millennium's Cross-MSJ should have been denied.**

HPI argues summary judgment in favor of Millennium was improperly granted where Millennium did "not own HPI's tanks," and Millennium's Opposition/Cross-MSJ "failed to meet the initial burden of a movant to show the absence of any genuine issue as to all material facts and its entitlement to judgment as a matter of law."  HPI argues that BIC had no ownership interest in the tanks under the language of the 2010 and 2011

---

Kahawaiolaa v. Hawaiian Sun Invs., Inc., 146 Hawai'i 424, 430, 463 P.3d 1081, 1087 (2020) (cleaned up).

Purchase Agreements and that HPI retained ownership of the tanks. HPI also points to the List of Purchased Equipment in the 2015 Bankruptcy Sale Order, which did not contain the Fireguard Tank or the Oil Tank. HPI argues that since BIC's ownership interest in the tanks was never established, and "the [bankruptcy] trustee never claimed that HPI's tanks were part of the debtor's [(BIC)] estate[,]" the tanks were not part of BIC's bankruptcy estate and could not have been sold to Millennium.

Millennium responds that "[t]he Fireguard Tank and the Oil Tank were part of [BIC]'s bankruptcy estate because they were installed at the [facility] prior to the commencement of the bankruptcy [proceeding]"; the tanks were part of a "turn-key" purchase; the List of the Purchased Equipment did not "attempt to list every single asset by name and/or photograph"; and the Trustee's Report of Sale described the assets sold as "including all machinery and equipment," at the facility. Millennium claimed that since HPI "took no action to challenge the breadth of [the] estate in the Bankruptcy Case[,]" as AmeriGas did for its similar contract, HPI essentially consented to the sale of the tanks.[8]

Here, HPI's evidence of the 2010 and 2011 Purchase Agreements established its ownership of both tanks. The agreements both contained choice of law provisions for Hawaiʻi

---

[8] The argument based on AmeriGas's Limited Objection is a red herring, because the bankruptcy court only had jurisdiction over the property of the debtor, BIC, when the bankruptcy case was filed -- which did not include AmeriGas's or HPI's tanks. AmeriGas, like HPI, was not required to mount a challenge in bankruptcy court when AmeriGas's tank was not part of the estate; and AmeriGas's Limited Objection prefaced its objection as such -- stating that its objection was being filed "out of an abundance of caution" even though it did not appear that the trustee was "attempting to sell the Tank," which the trustee had "no authority to do since the Tank is not an estate asset[.]"

law.[9]  See Title Guaranty Escrow Servs., Inc. v. Wailea Resort Co., Ltd., 146 Hawai‘i 34, 45, 456 P.3d 107, 118 (2019) ("When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." (citation omitted)).  We conclude that both agreements unambiguously provide that HPI maintained ownership of the tanks.

When BIC filed for bankruptcy, its bankruptcy estate consisted of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C.A. § 541(a)(1).[10]  The tanks were never the property of BIC, and thus, were not part of the property of the bankruptcy estate.  Because they were not part of the property of the bankruptcy estate under 11 U.S.C.A. § 541(a)(1), ownership of the tanks was never transferred to the bankruptcy trustee.  The List of Assets for Sale in the bankruptcy court's 2014 Order Approving Agency and Sale Agreement, and the List of Purchased Equipment in the 2015 Bankruptcy Sale Order, did not include the two tanks at issue in this appeal.  This is consistent with BIC never having a legal or equitable interest in them, and the tanks not being part of the property of BIC's bankruptcy estate.  See id.  Since the trustee never had the right to sell the tanks and never

_____

[9]   The 2010 Agreement provided that "the laws of the State of Hawaii shall be applicable" in any action that may be brought arising out of, or in conjunction with, the Agreement.  The 2011 Agreement similarly provided that it "shall be construed and enforced in accordance with the laws of the State of Hawaii."

[10]   11 U.S.C.A. § 541(a)(1) (2012), entitled "Property of the estate," provides that "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate"; and that "[s]uch estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  BIC's voluntary petition for bankruptcy fell under section 301.

purported to sell them, Millennium could not have purchased the Fireguard Tank and the Oil Tank. Millennium's evidence did not establish its entitlement to judgment as a matter of law, and its Cross-MSJ was erroneously granted. See Adams, 135 Hawai'i at 12, 346 P.3d at 81.

We also conclude that the Circuit Court erred in denying HPI summary judgment on its HRS § 654-1 replevin claim in Count 1.[11] HPI's evidence, described supra, met its prima facie burden to show it was "entitled to immediate and exclusive possession" of the tanks, shifting the burden to Millennium to prove that it had a "special right to title or possession" of the tanks, which Millennium's evidence failed to establish. See Kahawaiolaa, 146 Hawai'i at 430, 463 P.3d at 1087. On remand, an order granting HPI summary judgment as to Count 1 (replevin) should be entered, with further proceedings on the issue of damages.

In light of our conclusion, we also vacate the June 30, 2020 "Order Granting In Part, And Denying In Part, Defendants [Millennium]'s Motion for Attorneys' Fees and Costs."

---

[11] We do not address HPI's second argument that its UCC-based replevin claim in Count 2 was not barred by the four-year statute of limitations for UCC claims because the automatic bankruptcy stay tolled the period. This tolling argument is made in one sentence, without reference to the actual stay order itself, which is not a part of the record before us. See HRAP Rule 28(b)(7).

We also deny HPI's request in its Opening Brief for this court to take judicial notice of the "notice to creditors" filing in the bankruptcy court that was not included among Millennium's exhibits, which stated that the "filing of the bankruptcy case automatically stays" certain "prohibited actions" including "starting or continuing lawsuits." This "notice to creditors" document was not presented below or considered by the Circuit Court. See State v. Kwong, 149 Hawai'i 106, 117, 482 P.3d 1067, 1078 (2021) (stating that appellate courts "rarely take judicial notice of facts presented for the first time on appeal" (cleaned up)); Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 79 n.8, 229 P.3d 1133, 1144 n.8 (2010) ("Every appeal shall be taken on the record, and no new evidence shall be introduced in the appellate court." (cleaned up)).

For the foregoing reasons, the (1) March 24, 2020 "Findings of Fact, Conclusions of Law and Order Denying Plaintiff [HPI]'s Motion for Summary Judgment against [Millennium] and Granting Defendants' Cross Motion for Summary Judgment"; and (2) July 28, 2020 Final Judgment, both filed and entered by the Circuit Court of the Third Circuit, are vacated. We remand for the entry of an order granting HPI summary judgment on Count 1, and for further proceedings on the issue of damages.

DATED:  Honolulu, Hawaiʻi, August 23, 2024.

On the briefs:

Thomas R. Cole,
for Plaintiff-Appellant.

David H. Lawton,
for Defendants-Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge