**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000844**
**30-NOV-2022**
**02:08 PM**
**Dkt. 70 MO**

NO. CAAP-18-0000844


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


JK, Plaintiff-Appellee, v.
DK, Defendant-Appellant.


APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-D NO. 16-1-0408)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, and McCullen, J.,
with Nakasone, J., dissenting)

Defendant-Appellant DK appeals from the Family Court

of the Second Circuit's (1) September 5, 2018 "Order Denying

Defendant [DK's] Motion to Set Aside Entry of Default and

Default Judgment filed June 29, 2018" and (2) October 1, 2018

"Order Denying [DK's] September 17, 2018 Motion to Reconsider

the September 5, 2018 Order Denying [DK's] Motion to Set Aside

Entry of [June 26, 2017] Default and [July 24, 2017] Default Judgment."[1]  (Some brackets in original.)

## I.   BACKGROUND

DK and Plaintiff-Appellee JK were married in 1995 and had two children together, born in 1997 and 2000.  After twenty-one years of marriage, JK filed a Complaint for Divorce (**Complaint**) on October 20, 2016.  In the Complaint, JK indicated that he was a musician, both self-employed and employed at "U.H. Maui College" and DK was "Owner/Employee" of Edible Hawaiian Islands Magazine.  He stated that the marriage was irretrievably broken, and sought just and equitable division of assets and debts, joint legal and physical custody of their minor child, and no spousal support.

Represented by counsel, DK answered the Complaint, challenging JK's position on joint physical custody and no spousal support.

## A.   First Request For Financial Documents

On January 24, 2017, JK served on DK his "First Request for Production of Documents," which requested financial information including information related to her business, Edible Hawaiian Islands Magazine.  The deadline for her response was February 23, 2017, but DK did not respond.  JK's counsel

---

[1]  The Honorable Adrianne N. Heely presided over the motions to set aside and reconsider.  The Honorable Lloyd A. Poleman presided over the divorce proceedings.

phoned DK's counsel regarding the status of the past-due financial information, and DK's counsel stated "simply that she was withdrawing as [DK's] attorney."

## B.    Motion To Withdraw As DK's Counsel

Six days after the deadline to respond, DK's counsel moved to withdraw as counsel, declaring that DK "has not complied with the terms of our Retainer Agreement and several subsequent discussions regarding communication with Counsel and complying with deadlines."  (Emphasis added.)  DK's counsel served the motion to DK's P.O. Box 849 address.  JK did not oppose the motion to withdraw as counsel but requested that DK provide "her mailing and physical address" and apprise them of any changes to that information.

On March 9, 2017, the parties, including DK, were present for the hearing on the motion to withdraw, which was granted.  DK provided her mailing address as the P.O. Box 849 address.

## C.    Second Request For Financial Information

On March 18, 2017, JK's counsel called DK regarding the request for financial information, and DK "indicated she would have to consult with her accountant" and would call back on March 20, 2017.  With no response from DK, JK's attorney emailed on April 6, 2017 informing DK that if her response to the request for financial information was not provided by

April 11, 2017, they "will have no alternative but to file a motion to compel" and that "[n]ormally a [] motion to compel will include a request for attorney's fees and costs."

The day after the deadline to respond, on April 12, 2017, DK emailed JK's attorney indicating that the tax firm she hired informed her on April 8, 2017 that it could not represent either DK or JK because the "firm made an error and should of [sic] not taken [JK] on as a client" and she needs to find a new CPA. DK also indicated that she was "still looking for a new attorney" and the attorneys on Maui "declined to represent [her] due to conflict of interest. So [she has] moved [her] search to [Oʻahu]."

**D.   Motion To Compel Discovery And May 31, 2017 Hearing**

On May 4, 2017, JK moved to compel DK to respond to the request for financial documents, and for attorney's fees and costs related to the motion to compel. Attached to the motion was correspondence between JK's attorney and DK, and JK's first request for production of documents. The notice was served to the P.O. Box 849 address on May 2, 2017, and stated that the hearing was scheduled for May 31, 2017 at 10:00 a.m.

On May 31, 2017, three calls for DK were made, and there was no response. The family court granted JK's motion to compel and for attorneys' fees and costs "due to [DK's] failure to appear," and stated, "[DK] is defaulted." The family court

4

ordered DK to respond to discovery no later than June 13, 2017, with a hearing scheduled for June 27, 2017, and noted that "if [DK] fails to respond and fails to appear on June 27, 2017 at 1:30 p.m., the court may grant the proposed divorce decree that will be attached to the court order." (Formatting altered.)

However, that order was not served in a timely manner, resulting in a motion to extend these June 2017 dates.

**E.   Documents Served On June 27, 2017**

   **1.   First set of documents, filed June 26, 2017**

      **a.   JK's motion to extend deadlines (page 1)**[2]

On June 26, 2017, JK filed an "Ex Parte Motion to Extend Deadlines and to Continue Status Hearing" (**Motion to Extend Deadlines**) moving the family court "<u>for an order extending the deadlines in this matter and continuing the status hearing currently set for June 27, 2017</u> at 1:30 p.m. in Courtroom 3A." (Formatting altered and emphasis added.) The motion explains that "[t]he grounds for this Motion are <u>that [DK] has not been served</u> with the Order relating to the Motion to Compel Discovery filed May 5, 2017 and heard on May 31, 2017." (Emphasis added.)

---

   [2]   Pages 2 and 9 concern attorneys' fees and costs, and is not relevant to this appeal, except that implicit in the award of fees and costs is the finding that DK's failure to appear was not justified. <u>Aloha Unlimited, Inc. v. Coughlin</u>, 79 Hawaiʻi 527, 534, 904 P.2d 541, 548 (App. 1995) (explaining that "[i]mplicit in . . . awarding fees and costs is the finding that Aloha's failure to timely appear for the deposition was not justified").

### b. Counsel's declaration (pages 3-4)

In her declaration attached to the motion, JK's counsel explained that DK failed to appear at the May 31, 2017 hearing, and default was entered against her.

The declaration also reiterated the June 2017 deadlines: (1) DK was ordered to respond to discovery requests no later than June 13, 2017; (2) the family court set further hearing for June 27, 2017, and "the Court may grant a proposed Divorce Decree"; and (3) a status update was due by June 20, 2017.

JK's counsel then explained that she "drafted the Order of the hearing held May 31, 2017, but has not provided a copy to" DK. Thus, she "is requesting this Honorable Court to extend the deadlines imposed on [DK] and to continue the current status hearing to a later date."

### c. "Ex Parte Order" (pages 5-6)

Following the Motion to Extend Deadlines and the counsel's declaration was the "Ex Parte Order" that granted JK's Motion to Extend Deadlines and set forth new dates:



Record on Appeal, docket 11, pages 74-75

As shown in Paragraph Number 2 above, the order states that
"[t]he Status Hearing currently set for June 27, 2017 at 1:30
p.m. is hereby continued to be heard before the Honorable
Presiding Judge of the Family Court, Second Circuit, State of
Hawaii, on "Jul 20 2017" at 10:00 a.m. . . . ."  (Emphasis added.)
As shown in Paragraph Number 3, the deadline to respond to the
request for financial information was July 10, 2017.

The July 10th dates are handwritten in blue ink, and
the July 20th date is stamped.  And as shown in Paragraph
Number 6, the order stated that should DK fail to appear at the
hearing or respond to the discovery request, the court may grant

7

the "proposed Divorce Decree submitted and filed by Plaintiff." This order was dated June 26, 2017 and signed by the judge.

### 2. Second set of documents, filed June 26, 2017

#### a. Order of hearing held May 31, 2017 (pages 7-8)

The second set of documents started with the "Order of the Hearing Held May 31, 2017 on Plaintiff's Motion to Compel Discovery and For Attorney's Fees and Costs Filed May 4, 2017," which showed that three calls were made at the hearing on May 31, 2017, but DK failed to appear. This order then found DK "is hereby in default for her failure to appear herein."

This order also set forth the following June 2017 dates: (1) the response to the discovery request was due by June 13, 2017; (2) status update, "which shall consist of a proposed Divorce Decree," was due by June 20, 2017; and (3) the hearing was set for June 27, 2017, and "the Court may grant a proposed Divorce Decree submitted to the Court by Plaintiff which is attached as Exhibit 'B.'"

This order was signed by the judge, filed on June 26, 2017, and served on June 27, 2017.

#### b. Exhibit B - "Judgment Granting Divorce And Awarding Child Custody" (pages 10-19)

Exhibit B, JK's proposed "Judgment Granting Divorce and Awarding Child Custody" (**Proposed Judgment**), addressed the terms of the divorce, including division of property. The Proposed Judgment indicated that the "parties have no joint

8

credit union accounts, bank and savings accounts and security accounts" and set forth that "[e]ach party is awarded any and all credit union accounts, bank and savings accounts and security accounts presently in his or her own name as their sole and separate property."

For DK's business, the Proposed Judgment set forth that DK "shall be awarded any and all businesses in her name, including, but not limited to, the magazine called *Edible Hawaiian Islands*, as her sole and separate property and shall be solely responsible for any and all debts and tax consequences relating to her business or businesses."

For the real property, the Proposed Judgment set forth that JK "shall be awarded the real property . . . as his sole and separate property and he shall be solely responsible for any and all debts, expenses and costs relating to said property."

3.    **Certificate of service, filed June 27, 2017 (page 20)**

The certificate of service certified that "the Ex Parte Motion to Extend Deadlines and to Continue Status hearing; Exhibit 'A'; Declaration of Counsel; Ex Parte Order filed June 26, 2017" and "the Order of the Hearing Held May 31, 2017 on Plaintiff's Motion to Compel Discovery and for Attorney's Fees and Costs filed May 4, 2017; Exhibits 'A' and 'B' filed June 26, 2017" were served on DK.  The address on the certificate of service was the P.O. Box 849 address DK provided

to the family court, and the certificate of service was dated for, and filed on, June 27, 2017.

## F.   July 20, 2017 Hearing

At the July 20, 2017 further hearing on the motion to compel, three calls were made for DK and there was no response. Before proceeding, the family court reexamined the documents served on DK:

> [Family Court:]  The time is now 10:33.  This was scheduled for hearing at 10:30.
>
> There is an order of the hearing held on May 31st on plaintiff's motion to compel discovery and for attorney's fees and costs that was filed (inaudible) 4th.
>
> Attached to it [as] Exhibit A was the form or the method for attorney's fees by declaration to be presented to the Court.  And attached as Exhibit B was the plaintiff's proposed judgment granting divorce and awarded -- awarding child custody.
>
> Here is the certificate of service indicating that that order was served with those two attached exhibits on [DK] on June 26, 2017.
>
> [JK's Counsel:]  She's served on the 27th.
>
> [Family Court:]  And the prior order did provide that if she failed to appear today that the Court specifically said it would be -- if defendant fails -- failed to appear -- respond to the discovery request, and fails to appear at the hearing of June 27th, 2017, the Court may grant proposed divorce decree submitted to the Court.
>
> [JK's Counsel:]  And we filed that with the Court on the 26th and attached the order for hearing on May 31st.
>
> [Family Court:]  So, but today's the -- what happened to the June 27th hearing?  That was stricken and rescheduled?
>
> [JK's Counsel:]  Got continued because she was not served with the order and didn't have time to respond.
>
> [Family Court:]  Did she get notice of today's hearing?

[JK's Counsel:]  Yes.  On June 27th we -- we sent -- we filed a certificate of service saying on the certificate of service she got a copy of the order and the ex parte motion to extend the deadlines and to continue.

[Family Court:]  (Inaudible) status hearing.  Ah, the ex parte motion to extend deadlines and continue the status hearing, I just want to look at that.

[JK's Counsel:]  And that was filed on June 26th.

[Family Court:]  Thank you.  And the ex parte order sets new deadlines.  Defendant to respond to discovery request on or before July 10th.  And setting the status hearing on today's date, July 20th, at 10:00 a.m.

And that ex parte order further provides that if defendant fails to appear at the status hearing mentioned above or fails to respond to the discovery request by the deadlines stated herein, the Court may grant the proposed divorce decree submitted and filed by plaintiff.

. . . .

[JK's Counsel:]  -- we filed it on June 26th with the order.

[Family Court:]  And has there been any communication from the defendant?

[JK's Counsel:]  Nothing, your Honor.  I know that she -- although she's been in communication with my client about other things, a bill, she has not discussed the discovery or this divorce case with him.

[Family Court:]  So a default is entered against [DK].

Would you like your client sworn in today regarding jurisdiction or do you want to submit it by affidavit?

After hearing JK's testimony, the family court determined it had jurisdiction over this matter, and found that the marriage was irretrievably broken.  The family court then noted that it "previously entered default against [DK] for having failed to appear today and to -- and failing to comply with discovery requests."  The family court "grant[ed] the

decree of divorce that was filed as a proposed decree on June 26th, 2017."

The family court then turned to the division of assets. Regarding the real property, JK's Counsel explained that JK "owned the house prior to the marriage. And so his wife's interest would be any equity, increase in the equity." JK's Counsel also explained that DK "owns a business which my client has indicated that has substantial cash flow. Um, probably 100,000 a year in cash flow. Right? After -- after her expenses are paid. Maybe before taxes." She estimated, "the value of her -- as close as I could estimate, the value of her business, um, would be equal to or close to the increase in the value of the house that he owned -- or owns." "And so for that reason, we drafted the divorce decree the way we drafted it."

The family court then questioned JK under oath about the division of real property and whether it was reasonably fair:

> [Family Court:] So -- so let me ask you. Do you think that how everything is divided up in the divorce decree, is it reasonably fair?
>
> [JK:] I -- I do. I mean I understand that [DK] is entitled to half the increase in equity of the house. And we had an informal agreement when we were married that she had no interest in the property. Although I offered her, you know, sharing the title. And I paid for everything with the house for the en -- our entire marriage. All taxes, all mortgage, all repairs and maintenance.

[Family Court:] Is -- is the value of her business, in your opinion, reasonably close to the value of the increase in equity, if divided by two, during the marriage?

[JK:] I think it's close. But I --

[Family Court:] All right. I'm satisfied.

[JK's Counsel:] Your Honor, there is one, um error I think I made that is manifestly unjust to [DK]. And that is in the proposed decree I have a paragraph in there that says undisclosed assets and if she doesn't disclose -- anybody failed to disclose it, so that the other party would be awarded it.

Since we're going by default and she hasn't disclosed anything that -- that would ostensibly mean he gets everything that she owns. And I don't think that that's fair to her.

So I'd like to delete that paragraph.

[Family Court:] Okay. You'll strike that paragraph. As well as there's a paragraph that states that this decree is by agreement.

On July 24, 2017, the "Judgment Granting Divorce and Awarding Child Custody" was entered, finding that DK failed to appear and "default is entered against her." The family court awarded JK the real property and DK "any and all businesses in her name, including, but not limited to, the magazine called *Edible Hawaiian Islands*, as her sole and separate property[.]"

The family court also retained "jurisdiction over the parties and their property to enforce and implement the provisions of this Judgment" and "enforcement jurisdiction of all of the above issues until the parties have complied fully with the terms and conditions as set forth herein."

Based on the July 25, 2017 Certificate of Service, two certified copies of the judgment were served on DK at the P.O. Box 849 address she provided to the court.

**G.   DK's Motion To Set Aside**

**1.   Motion to set aside**

Almost one year later, on June 29, 2018, DK filed her "Motion to Set Aside Entry of Default and Default Judgment" (**Motion to Set Aside**).  DK based this motion on Hawaiʻi Rules of Civil Procedure (**HRCP**) Rules "60(b)(1) (mistake, inadvertence, surprise, or excusable neglect)" and "60(b)(3) (fraud, misrepresentation, or other misconduct of an adverse party)."

Attached to her Motion to Set Aside was DK's declaration, where she stated that the "hearing was continued by [JK's] attorney Ex Parte -- i.e., without notice to me."  She also stated that "[t]o add to the confusion, when [JK's] attorney finally did serve the May 31 order, she did so at the same time as an Ex Parte Order filed June 26, 2017 with the result that, at a time when I was unrepresented, I was served simultaneously with confusing and conflicting notices."

Also attached to DK's Motion to Set Aside were the following exhibits:

A.   the June 26, 2017 Motion to Extend Deadlines;

B.   the June 27, 2017 Certificate of Service;

14

C. DK's Income and Expense Statement dated June 27, 2018, showing her job title as "Editor, Sales," her employer as "Edible Hawaiian Islands" with the P.O. Box 849 address, and a gross pay of $4,166 per month, a net pay of $4,166 per month, and take home pay of $4,166 per month; and showing housing and transportation expenses;

D. DK's Asset and Debt Statement dated June 27, 2018, showing two checking accounts, a cemetery plot, and four debts totaling $12,900;

E. correspondence from Harold Berman, J.D. (**Berman**), dated April 18, 2017 regarding withdrawal of services from both DK and JK;

F. correspondence to JK's Counsel dated April 12, 2017 regarding finding a new accountant and new counsel; and

G. correspondence to JK's Counsel dated April 28, 2017 regarding difficulty finding new counsel.

**2. JK's Memorandum in Opposition**

On July 13, 2018, JK opposed DK's Motion to Set Aside. In the declaration attached to his opposition, JK stated that DK has several businesses he is aware of, namely, Edible Hawaiian Islands Magazine, Edible Events, Duka Inc., and Kupu Maui; and he understood from DK that the magazine was making a $90,000 profit under previous ownership and the magazine was appraised at $90,000. JK stated that checks he sent to her, and she cashed, were sent to the same P.O. Box 849 address as the court filings, and this is also the address she received checks from her advertisers. JK attached twenty-eight exhibits with his response.

15

### 3. DK's Memorandum in Reply

On July 25, 2018, DK replied to JK's opposition, raising for the first time Hawaiʻi Family Court Rules (**HFCR**) Rule 60(b)(4) (judgment void).

Attached to the reply were declarations from DK and her attorney. DK's declaration included statements that "conflicting notices, which I received in the same envelope, were confusing to me and I did not have an attorney to help me figure out how to interpret them" and "the only active business I own, [is] Edible Hawaiian Islands Magazine." Also attached were the following exhibits:

    A.    a revised Asset and Debt Statement dated July 25, 2018, which now included Edible Hawaiian Islands Magazine valued at $60,000 and debt owed against the magazine at $34,000; and

    B.    an Edward Jones document dated July 24, 2018, stating, "No Holdings found for this client[.]"

### 4. JK's Responsive Memorandum

On August 1, 2018, JK filed a responsive memorandum and declaration with the following exhibits:

    A.    screen shot and email regarding taxes; and

    B.    a letter from DK in Edible Hawaiian Islands Magazine announcing the launch of a new business, Lawelawe Hawaii, published "Summer 2018[.]"[3]

---

[3] Of note, the Edible Hawaiian Islands publication lists the P.O. Box 849 address as the magazine's address.

16

In a supplemental declaration filed the next day, JK stated, "I did not realize the scope of how much money I forgave that [DK] had taken from my Seaside Recording checking account and credit card and diverted it to her own business expenses. This would surely be in the six-figure range." JK also declared that "[i]f the default was set aside it could require me to re-negotiate finances and property with [DK]."

### 5.   Hearing and order

On August 6, 2018, a hearing was held on DK's Motion to Set Aside Default. According to the court minutes, the hearing lasted one hour and twenty-three minutes, from 10:14 a.m. to 11:37 a.m.[4]

The family court entered an order denying DK's motion on September 5, 2018, determining that: (1) as related to HFCR Rule 60(b)(3), there was "no evidence of intrinsic fraud or judgment procured by fraud in this matter;" (2) as related to HFCR Rule 60(b)(4), there was "no due process violation [that] occurred in this matter;" and (3) "the sanction of default was within the sound discretion of the Court."

---

[4]  DK, however, did not provide this court with the transcripts for this proceeding. It is DK's burden to show error by reference to the record, and DK is responsible for providing the transcript of relevant oral proceedings. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 10(b)(1)(A).

**H.    DK's Motion To Reconsider**

**1.    Motion to reconsider**

Twelve days later, on September 17, 2018, DK timely moved the court to reconsider its order denying the Motion to Set Aside (**Motion for Reconsideration**) pursuant to HFCR Rule 59(e).  For the first time, DK cites to HFCR Rule 60(b)(6).

A declaration by Michael Thoemke was attached, appraising JK's home at $679,000 as of July 24, 2017, and represented that the "average for the four homes in this neighborhood in 1997 was $222,250 and in 2017 it was $699,500." DK provided a declaration.  And the following exhibits were attached:

> A.    transcripts of proceedings held on July 20, 2017;
>
> B.    Appraisal report dated September 13, 2018;
>
> C.    Real Property Values Chart dated September 13, 2018;
>
> D.    spreadsheet page of real properties dated September 13, 2018;
>
> E.    spreadsheet page of real properties dated September 13, 2018;
>
> F.    various correspondence related to appraiser;
>
> G.    correspondence dated January 31, 2013 regarding assignment of rights to Edible Hawaiian Islands for $60,000 (without previous owner's signature); and
>
> H.    American Web invoices (one not intelligible).

**2. JK's Memorandum in Opposition**

In opposition, JK argued that DK "has not brought to this court's attention any new evidence or arguments which could not have been presented at the August 6, 2018 hearing on her" Motion to Set Aside.

**3. DK's Supplemental Declaration**

On September 27, 2018, DK provided a supplemental declaration to, among other things, "inform the Court of the psychological aspects of what [she] was going through in the spring and early summer of 2017 when [she] missed deadlines and court dates."  DK also stated, "the increase in value of the house is $436,000, the increase in equity as a result of paying off the mortgage during our marriage is about $70,000, and the value of my business is at best the purchase price of $60,000 minus the debt accumulated by the business since purchase ($34,000) which comes out to only $26,000."  (Emphasis added.) She also declared, "I have never taken a salary from Edible Hawaiian Islands, LLC -- only the draws shown on my Schedule C returns, which was less than $25,000 per year for those three years."  The following exhibits were attached:

      I.    2015 Joint U.S. Individual Tax Return (prepared by Deborah Daniels);

      J.    2016 Schedule C;

      K.    2017 Schedule C;

L.    photos and correspondence related to sale of
      artwork; and

M.    correspondence to DK dated March 6, 2018
      regarding advertisement for a one-bedroom
      apartment.

### 4.    Order Denying Motion to Reconsider

On October 1, 2018, the family court denied DK's

Motion to Reconsider, resolving the issue of HFCR Rule 60(b)(1)

by finding that DK "has not met the burden of establishing that

mistake, inadvertence, surprise, excusable neglect, or newly

discovered evidence had occurred, pursuant to H.F.C.R.

Rule 59(e) and/or 60(b), justifying the setting aside of the"

Order Denying Motion to Set Aside.  The family court also found

that DK "has not brought to this court's attention any new

evidence or arguments which could not have been presented at the

August 6, 2018 hearing on [DK's] Motion to Set Aside . . . ."

The family court noted that,

> subject to the limitations in [Hawaii Revised Statutes
> (**HRS**)] § 580-56 and pursuant to Section 25, of the
> [Judgment Granting Divorce and Awarding Child Custody]
> filed July 21, 2017, should either party, Plaintiff and/or
> Defendant file a Motion for Relief (i.e., Motion for Post
> Decree Relief or a Motion to Enforce Decree), a hearing may
> be set to give both parties an opportunity to be heard,
> should they seek to address the issues within the Divorce
> Decree, including but not limited to, the non-compliance of
> any part of the Decree."

DK filed a timely notice of appeal.

### II. DISCUSSION

On appeal, DK asserts that the family court erred when

it failed to set aside the default judgment, pursuant to HFCR

Rule 60(b). To that end, DK raises seven points of error to this court.

HFCR Rule 60(b) provides for relief from a judgment or order, in pertinent part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) of these Rules or to reconsider, alter, or amend under Rule 59(e);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (6) any other reason justifying relief from the operation of the judgment.

(Formatting altered.) The standard of review for HFCR Rule 60(b)(4) is de novo. Cvitanovich-Dubie v. Dubie, 125 Hawai'i 128, 139, 254 P.3d 439, 450 (2011).

As for HFCR Rule 60(b)(6), the Hawai'i Supreme Court explained that the standard of review is the abuse of discretion standard, and "[s]ince Rule 60(b)(6) relief is contrary to the general rule favoring finality of actions, the court must carefully weigh all of the conflicting considerations inherent

in such applications." Id. (citation omitted). The abuse of discretion standard also applies with regard to HFCR Rules 60(b)(1) and (b)(3). Ledcor-U.S. Pacific Constr. LLC v. Joslin, 134 Hawaiʻi 179, 339 P.3d 533, CAAP-12-0000041, 2014 WL 5905077 at *3 (App. Nov. 13, 2014) (mem.) (regarding HRCP Rules 60(b)(1) and (6)); Plauche v. Plauche, 129 Hawaiʻi 29, 292 P.3d 233, CAAP-11-0000369, 2013 WL 275551 at *1 (App. Jan. 24, 2013) (SDO) (regarding HFCR Rules 60(b)(3) and (6)).

"Once the court has made a determination to grant or deny relief, the exercise of its discretion will not be set aside unless the appellate court is persuaded that, under the circumstances of the case, the court abused its discretion" and "an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. at 139-40, 254 P.3d at 450-51 (citation omitted).

**A.   HFCR Rule 60(b)(4) - Void Judgment**

In her first two points of error, DK contends that the judgment is void, citing to HFCR Rule 60(b)(4). Notably, this argument was not raised in DK's Motion to Set Aside Default and, instead, was raised for the first time in her July 25, 2018 reply to JK's memo in opposition to her Motion to Set Aside Default. However, "[a] reply must respond only to arguments

22

raised in the opposition," and JK's memorandum in opposition did not address HFCR Rule 60(b)(4). Rules of the Circuit Court of the State of Hawaiʻi (**RCCH**) Rule 7(b). Thus, DK violated RCCH Rule 7(b) by raising HFCR Rule 60(b)(4) in her reply.

Exercising our discretion, we nonetheless address DK's HFCR Rule 60(b)(4) claims that the judgment here is void. "It has been noted that a judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of the law." In re Hana Ranch Co., 3 Haw. App. 141, 146, 642 P.2d 938, 941 (1982).

### 1. HFCR Rule 10(c)

DK first contends that the family court's "failure to require [JK] to attach the required financial disclosures before granting monetary relief renders the judgment void as a matter of law pursuant to HFCR, Rule 60(b)(4)." DK specifically challenges the family court's finding that "no due process violation occurred in this matter" and relies on HFCR Rule 10(c).

HFCR Rule 10(c) provides that

Any motion seeking an order for or modification of financial or monetary relief of any kind, except for an award of attorney's fees in enforcement proceedings, shall have attached, typewritten, unless otherwise permitted by the court for good cause shown, income and expense and asset and debt statements on the form provided by the court

or equivalent forms, executed by the movant and duly
notarized or executed under penalty of perjury.

(Emphasis added.)

In his Motion to Compel, JK moved for an order "compelling [DK] to respond to [JK's] First Request for Production of Documents submitted on January 24, 2017[,]" and "awarding [him] his reasonable attorney's fees and costs to for [sic] having to file this motion." Aside from attorney's fees that are exempt, this motion did not seek "an order for or modification of financial or monetary relief of any kind" to require JK to attach "income and expense and asset and debt statements" to his motion to compel. HFCR Rule 10(c).

To the extent the July 20, 2017 hearing is construed as addressing an HFCR Rule 10(c) motion, the family court had before it the complaint for divorce, JK's Counsel's representations, and JK's testimony. JK's Counsel explained that JK owned the property prior to the marriage and so DK's interest would be the increase in value. JK's Counsel also represented that the cash flow in DK's business was probably $100,000 a year after expenses, but was unclear if it was before taxes. She estimated that the value of DK's business would be close to the increase in the value of the property.

The family court asked JK, "is the value of her business, in your opinion, reasonably close to the value of the increase in equity, if divided by two, during the marriage?" JK

testified, "I think it's close." This testimony, however, would not satisfy the "income and expense and asset and debt statements" required by HFCR Rule 10(c).

In determining whether failure to provide "income and expense and asset and debt statements" render the Decree void under HRAP Rule 60(b)(4), we look at whether the family court or the parties "acted in a manner inconsistent with due process of the law." Cvitanovich-Dubie, 125 Hawai'i at 141, 254 P.3d at 452 (citation omitted). And "in the sound interest of finality, the concept of a void judgment must be narrowly restricted." Id. (citation and internal quotation marks omitted).

"At its core, procedural due process of law requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty [or property] interest." State v. Bani, 97 Hawai'i 285, 293, 36 P.3d 1255, 1263 (2001) (citations omitted). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonabl[y] calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Calasa v. Greenwell, 2 Haw. App. 395, 399, 633 P.2d 553, 556 (1981) (citation omitted).

25

"The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance[.] But if with due regard to the practicalities of the case these conditions are reasonably met, the constitutional requirements are satisfied."  Id.  "[D]ue process is flexible and calls for procedural protections as the particular situation demands." Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawaiʻi 217, 243, 953 P.2d 1315, 1341 (1998) (citations omitted).

In reviewing this particular situation, DK had five opportunities to produce information related to her finances: (1) the February 23, 2017 deadline by JK (and while represented by counsel); (2) the April 11, 2017 second deadline by JK; (3) the May 31, 2017 hearing on JK's Motion to Compel; (4) the July 10, 2017 family court deadline; and (5) the July 20, 2017 hearing.

After missing the February 24, 2017 deadline, DK's attorney withdrew, in part because DK failed to meet deadlines. The day after missing the April 11, 2017 deadline, DK contacted JK's attorney indicating that she was looking for a new CPA and attorney.  On May 2, 2017, DK was provided notice of the May 31, 2017 hearing, for which she failed to appear.  At that point, DK missed two deadlines to provide her financial information and

failed to appear at the hearing on the motion to compel production of her financial information.

Due to DK's failure to appear at the May 31, 2017 hearing, the family court ordered further deadlines for June 13 and 20, 2017 and a hearing for June 27, 2017. But, because that order was not served upon DK in a timely manner, those June 2017 dates were continued to July 2017, and DK was served with these documents on June 27, 2017.

In addition to the explanation that the June 2017 dates were continued to July 2017, there should have been no confusion about the inapplicability of the June 2017 dates because the documents served on June 27, 2017 would have been delivered to the P.O. Box 849 address after the June 2017 dates had passed. It was only possible for DK to comply with the July 2017 dates.

DK was also served with a copy of JK's Proposed Judgment, which included a provision that JK would be awarded the Property and a provision that DK would be awarded her businesses. DK was cautioned that if she failed to appear, the family court may accept the "proposed Divorce Decree submitted and filed by Plaintiff," and the only proposal submitted and filed by JK was the Proposed Judgment. Service was made on June 27, 2017 to the P.O. Box 849 mailing address that DK provided to the court.

27

Although not a model of clarity, when read in its entirety, and in context with the date of service, the documents served upon DK on June 27, 2017 informed her of when (July 20, 2017 at 10:00 a.m.) and where (Courtroom 3A) to appear. These documents also conveyed the possible consequence (accepting the proposal filed by JK) should DK fail to appear or fail to provide her financial information.

In other words, under the circumstances in this case, DK was afforded adequate notice to apprise her of the pending action, and proceeding without an HFCR Rule 10(c) statement by JK did not violate due process. Accordingly, the family court's finding of "no due process violation" was not erroneous.

Only after DK disregarded three deadlines to provide financial information and missed two hearings did the family court accept the only proposition on the table, JK's Proposed Judgment. Moreover, requiring JK to provide "income and expense and asset and debt statements" for HFCR Rule 10(c) purposes during the July 20, 2017 hearing would have been futile for dividing the property if the family court did not have DK's financial information with which to compare it.

Thus, the family court's denial of DK's motion to set aside the judgment as void for failing to comply with HFCR Rule 10(c) was not wrong.

2.    **HFCR Rule 37**

DK next contends that HFCR Rule 55 "is not a permissible sanction for failure to comply with a discovery order under HFCR Rule 37" (formatting altered).  DK argues that "[b]ecause default was entered against [her] as an impermissible sanction for a discovery order - and not for any failure to file an answer - the Family Court's entry of default on June 26, 2017 [] was void pursuant to HFCR, Rule 60(b)(4)."  Here, HFCR Rule 37 applied, and not HFCR Rule 55.

"Without leave of the court . . . , any party may serve upon any other party written interrogatories" and "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."  HFCR Rules 33(a) and (b)(1).  "The party submitting the interrogatories may move for an order under Rule 37(a) of these Rules with respect to any objection to or other failure to answer an interrogatory."  HFCR Rule 33(b)(5).

If "a party fails to answer an interrogatory submitted under Rule 33 of these Rules, . . . the discovering party may move for an order compelling an answer . . . ."  HFCR Rule 37(a)(2).  Where a motion to compel is granted and a party fails to obey the order, the family court may make "[a]n order

striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or <u>rendering a judgment by default against the disobedient party</u>[.]" HFCR Rule 37(b)(2)(C) (emphasis added).

As stated, DK missed the first deadline (February 23, 2017) to provide her financial information. DK's counsel then moved to withdraw, in part because DK was not complying with deadlines. DK missed her second deadline (April 11, 2017) to provide information. JK moved to compel, and attached a notice indicating that a hearing on the motion was set for May 31, 2017 at 10:00 a.m. DK was served a copy of the Motion to Compel and Notice of Motion at the P.O. Box 849 mailing address she provided to the court.

When DK did not appear at the May 31, 2017 hearing, the family court found DK "is hereby in default for her failure to appear herein[,]" granted JK's Motion to Compel Discovery, awarded JK's attorney's fees and costs, and scheduled a further hearing on the matter. That order was entered on June 26, 2017, and that is the default order DK challenges in her second point of error.

When DK failed to appear on May 31, 2017, the family court found her in default for failing to appear and scheduled another hearing on the matter. Nowhere in the June 26, 2017

30

order did the family court cite to HFCR Rule 55 or enter a judgment of default. Instead, the family court gave DK another opportunity to comply with the order granting JK's Motion to Compel. Further, the family court gave DK notice in paragraph 6 of the June 26, 2017 order that "if [DK] fails to appear at that status hearing mentioned above or fails to respond to the discovery requests by the deadline stated herein, the court may granted [sic] the proposed Divorce Decree submitted and filed by [JK]."

Based on this record, the June 26, 2017 order finding DK in default for failing to appear was not a "default judgment" pursuant to HFCR Rule 55. And even if it was a default judgment, such a judgment is authorized by HFCR Rule 37(b)(2)(C). A trial court is given broad discretion when imposing sanctions for discovery abuse, and there was no abuse of discretion in finding DK in default for failing to appear on May 31, 2017 and providing her another opportunity to comply with the order granting JK's Motion to Compel Discovery. See Aloha Unlimited, Inc., 79 Hawaiʻi 527, 532-33, 904 P.2d 541, 546-47.

In sum, the family court's denial of DK's motion to set aside the judgment as void based on HFCR Rule 60(b)(4) was not wrong.

**B.    HFCR Rule 60(b)(6)**

In her third point of error, relying on HFCR Rule 60(b)(6) (other reasons justifying relief), DK argues that "[t]he one-sided divorce decree drafted by [JK] is so disproportionately in his favor as to be unconscionable."  DK clarifies she "is not appealing the divorce, but is appealing the division of assets."

DK, however, raised this issue for the first time in her motion for reconsideration.  "[T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion."  See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008) (citation omitted).  It "is not a device to relitigate old matters or raise new arguments or evidence that could and should have been brought during the earlier proceeding."  Id.

Pursuant to HFCR Rule 60(b)(6), the court may relieve a party from any or all provisions of a final judgment for "any other reason justifying relief from the operation of the judgment."  But, HFCR Rule 60(b)(6) "is only invoked upon a showing of exceptional circumstances."  Thomas-Yukimura v. Yukimura, 130 Hawaiʻi 1, 9, 304 P.3d 1182, 1190 (2013) (citation omitted); see also Nakata v. Nakata, 3 Haw. App. 51, 56, 641 P.2d 333, 336 (1982) (stating HFCR Rule 60(b) is not intended to

"reliev[e] a party from free, calculated, and deliberate choices he, she, or it has made") (citations omitted).

Included with her Motion for Reconsideration and supplemental declaration, DK provided information appraising the increase in the value of the Property, an incomplete assignment of rights for her business dated for 2013, American Web invoices dated in 2015 and 2017, unsigned 2015 and 2016 tax information, correspondence related to sales of artwork dated November 3 and 24, 2017, and correspondence related to advertisement for a one-bedroom apartment dated March 6, 2018.

DK, however, provided no explanation as to why these documents or information could not have been provided with her June 20, 2018 Motion to Set Aside or at the August 6, 2018 hearing. With no explanation from DK and no transcripts of the August 6, 2018 hearing, we cannot say that the family court erred in finding DK "has not brought to this court's attention any new evidence or arguments which could not have been presented at the August 6, 2018 hearing on [her] Motion to Set Aside Default Judgment." Thus, the family court's denial of DK's Motion to Reconsider based on HFCR Rule 60(b)(6) was not an abuse of its discretion.

**C.   HFCR Rule 60(b)(3) - Fraud, Misrepresentation, Misconduct**

In her fourth, fifth, and sixth points of error DK relies on HFCR Rule 60(b)(3) for fraud, misrepresentation, or misconduct.

Under the two-part test for HRCP Rule 60(b)(3), which is nearly identical to HFCR Rule 60(b)(3), 'the movant must, (1) prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct, and (2) establish that the conduct complained of prevented the losing party from fully and fairly presenting [her] case or defense." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawaiʻi 214, 251-52, 948 P.2d 1055, 1092-93 (1997) (cleaned up). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." HFCR Rule 9(b); HFCR Rule 60(b) (providing in part that for HFCR Rule 60(b)(3), "the averments in the motion shall be made in compliance with Rule 9(b) of these Rules").

**1.   Misrepresentation**

In her fourth point of error, DK contends that the family court "abused its discretion by failing to set aside the July 20, 2017 default judgment." DK argues that "[r]eviewing the transcript side by side with the outcome leads to the conclusion that Judge Poelman was misled by [JK's] misrepresentations."

DK, however, did not raise this argument or provide a transcript of the July 20, 2017 hearing when she filed her Motion to Set Aside Default. See HRS § 641-2 (2016) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner.") DK furnished the July 20, 2017 transcripts with her Motion for Reconsideration, but failed to provide any explanation as to why that evidence could not have been presented in her Motion to Set Aside or the August 6, 2018 hearing on the Motion to Set Aside.

As stated above, a motion for reconsideration "is not a device to relitigate old matters." Kamaka, 117 Hawai'i at 104, 176 P.3d at 103. The July 20, 2017 transcripts "could and should have been brought during the earlier proceeding." Id. Thus, the family court did not abuse its discretion in denying DK's Motion for Reconsideration based on misrepresentation under HFCR Rule 60(b)(3).

### 2. Resolving doubt

In her fifth point of error, DK contends that the family court "abused its discretion by failing to resolve any doubt as to the accuracy of JK's representations in favor of [DK] under HFCR, Rule 60(b)(3)." In her opening brief, DK points out that this issue was "presented to the Family Court at p.9 of [her] motion for reconsideration." In that section of her Motion for Reconsideration, DK fails to provide any reason

why this argument could not have been raised in her Motion to Set Aside or during the August 6, 2017 hearing on her Motion to Set Aside. Thus, we cannot say that the family court erred in determining that DK "has not brought to this court's attention any new evidence or arguments which could not have been presented at the August 6, 2018 hearing on [her] Motion to Set Aside Default Judgment."

### 3. Misconduct

In her sixth point of error, DK contends that the family court "abused its discretion by failing to set aside the July 20, 2017 default judgment under HFCR Rule 60(b)(3) as it was procured by 'other misconduct.'"

DK argues that her "reasonable efforts to prepare financial disclosures, and to secure defense counsel to comply with court orders, were stymied in large part by [JK's] 'misconduct.'" DK alleges there were three instances of misconduct - (a) JK "interfering with [her] preparation of financial disclosures[,]" (b) JK's "misuse of control of the couple's money[,]" and (c) JK's "failure to make financial disclosures" – that, individually or "[t]aken together, . . . provides this Court with ample evidence to find that the family court abused its discretion when it failed to set aside the default judgment based on misconduct within HFCR, Rule 60(b)(3)." (Formatting altered.)

36

DK, however, did not provide any evidence that there was misconduct regarding the CPA services of Berman. DK provided a letter from Berman, dated April 18, 2017, stating he cannot prepare her 2016 tax return "[d]ue to ethical reasons and conflicts of interest." But, the letter makes no reference to any kind of misconduct by JK, and JK received a similar letter.

DK's "Income and Expense" statement described her salary and her housing, transportation, and personal expenses for the month, and her "Asset and Debt Statement" described two checking accounts, a cemetery plot, and debts from Square, Hawaiian Air, American Express, and Hana Rose. DK does not explain how any of these disclosures showed fraudulent misconduct by JK or what conduct by JK prevented her from disclosing this information during the 2017 proceedings.

Moreover, DK did not provide evidence in her motion to set aside default of JK misusing the couple's money. JK, however, provided copies of numerous processed checks showing that DK wrote checks on JK's business bank account.

And, as discussed above, JK was not required to file financial disclosures with his Motion to Compel and, thus, that was not misconduct on JK's part. Also as discussed above, JK's testimony during the July 20, 2017 hearing was not a substitute for HFCR Rule 10(c) financial statements. But, this does not amount to HFCR Rule 60(b)(3) misconduct by JK.

37

Accordingly, DK did not establish that the judgment in this case was obtained by JK's fraudulent misconduct, and with no transcripts of the August 6, 2017 hearing, we cannot say that the family court abused its discretion by denying DK's Motion to Set Aside based on HFCR Rule 60(b)(3).

## D.   HFCR Rule 60(b)(1) - Excusable Neglect

In her seventh and final point of error, DK contends that the family court "abused its discretion by failing to set aside the July 20, 2017 default judgment under HFCR Rule 60(b)(1) on the grounds of mistake, inadvertence, surprise, or excusable neglect."  DK argues that her failure to appear at the two hearings was excusable.

"The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  Brandt v. Am. Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993)).  "[A] party cannot have relief under 60(b)(1) merely because he is unhappy with the judgment. Instead he must make some showing of why he was justified in failing to avoid mistake or inadvertence.  Gross carelessness is not enough."  Joaquin v. Joaquin, 5 Haw. App. 435, 443, 698 P.2d 298, 304 (1985) (citations omitted and emphasis added).

1.  **Attorney**

DK argues that her difficulty finding an attorney contributed to her failure to appear at the two hearings. She asserts that she "was unable to find a Maui Family Law attorney who was willing to take her case" because "they had a conflict of interest" with JK and the per diem judge with whom he had a relationship.

The record indicates that on April 12 and 28, 2017, DK communicated with JK's lawyer that she was still looking for an attorney, and moved her search to O'ahu. In her declaration, DK named four attorneys she contacted, with two willing to represent her but she did not have the funds to hire one and she declined to proceed with another due to a conflict with a contractor.

But, DK does not explain how difficulties in obtaining an attorney justified her failure to appear at the scheduled hearings. Should DK have appeared at one of the hearings, she could have explained her difficulty in finding an attorney to the family court and requested more time.

2.  **E-mail**

DK also argues that another factor contributing to her missing the two hearings was because JK's counsel did not send her a courtesy e-mail of the hearings. DK cites to no legal authority that requires JK to provide a courtesy e-mail of any

upcoming hearings. Instead, the record indicates that JK's counsel properly notified DK pursuant to HFCR Rule 5.

### 3. Notice

DK further argues that lack of notice and confusing and conflicting notices contributed to her missing the two hearings. As to the lack-of-notice argument, DK asserts that "the Court's May 31 order was not served on [her] until 14 days after the June 13 deadline." DK is correct that the May 31, 2017 order regarding the June 2017 deadlines and hearing was not served on her until after the deadlines had passed. But, she is not being held accountable for missing the June 2017 deadlines and hearing because she was not served, and the June 2017 deadlines and hearing were continued to July 2017. Thus, the lack of notice of the May 31, 2017 order does not demonstrate excusable neglect for missing the two hearings.

As to her confusing-and-conflicting argument, DK asserts that "at a time when [she] was unrepresented, she was served simultaneously with confusing and conflicting notices." This assertion, like the lack-of-notice assertion does not apply to, or demonstrate excusable neglect for, DK missing the first hearing on May 31, 2017.

For the July 20, 2017 hearing, DK was served with two filings. The first was "the Ex Parte Motion to Extend Deadlines and to Continue Status hearing; Exhibit 'A'; Declaration of

40

Counsel; Ex Parte Order filed June 26, 2017[,]" and the second was "the Order of the Hearing Held May 31, 2017 on Plaintiff's Motion to Compel Discovery and for Attorney's Fees and Costs filed May 4, 2017; Exhibits 'A' and 'B' filed June 26, 2017[.]"

In the first filing, the first page stated that JK moves "for an order extending the deadlines in this matter and continuing the status hearing currently set for June 27, 2017." That first page also stated, "The grounds for this Motion are that [DK] has not been served with the Order relating to the Motion to Compel Discovery filed May 5, 2017 and heard on May 31, 2017." Thus, that first page explained that the June 2017 deadlines and the June 27, 2017 hearing, should be extended because DK had not been served.

The third page of the first document is the "Declaration of Counsel," which stated that "[i]t is respectfully requested that the Court continue the deadlines ordered at the hearing of May 31, 2017." The declaration is then followed by the "Ex Parte Order," which set forth July deadlines handwritten in blue ink, and the July hearing date stamped. This order was signed by the judge, also in blue ink.

In the second filing, the first page is entitled "Order of the Hearing Held May 31, 2017 on Plaintiff's Motion to Compel Discovery and For Attorney's Fees and Costs Filed May 4, 2017." This document set forth the June deadlines, which, as DK

noted, had already passed by the time she received these documents.

In sum, the documents show that the June 2017 dates needed to be continued because DK was not served in a timely manner, the June 2017 dates had passed by the time the documents were served on DK, and the July dates were the only dates with which DK could comply. Thus, serving the documents that established the June 2017 deadlines and hearing with the documents that set forth the continued July 2017 deadlines and hearing, did not provide an excuse for failing to appear at the July 20, 2017 hearing. Joaquin, 5 Haw. App. at 442, 698 P.2d at 303 (explaining that "[a] mistake as to the nature and effect of a document caused by a failure to read it is not an excusable mistake") (citation omitted); Pogia v. Ramos, 10 Haw. App. 411, 417, 876 P.2d 1342, 1345-46 (1994) (explaining that "'lack of legal sophistication . . . cannot form the basis of a claim of excusable neglect . . . for purposes of Rule 60(b)' where the defendant, after receiving notice, failed to appear or answer") (citation omitted). Accordingly, DK did not show why she was justified in failing to appear at the July 20, 2017 hearing.

DK's missing the July hearing was not an aberrant act on the record in this case. Instead, it was a continuation of her conduct throughout the discovery process, where she repeatedly failed to provide her financial information. This

failure to provide financial information deprived JK, and the family court, of information needed to proceed to trial.  See Aloha Unlimited, Inc., 79 Hawai'i at 533, 904 P.2d at 547.

**4.  Equity**

Again, "[t]he determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  Brandt, 653 F.3d at 1111 (citation omitted).  The gist of DK's appeal is that the division of property was unfair because, as DK stated, "the increase in equity as a result of paying off the mortgage during our marriage is about $70,000, and the value of my business is at best the purchase price of $60,000 minus the debt accumulated by the business since purchase ($34,000) which comes out to only $26,000."

But the information DK provided to the family court regarding her business was vague and conflicting.  In the income and expense statement attached to her motion to set aside, DK represented that Edible Hawaiian Islands Magazine was her employer, and she earned a gross, net, and take-home pay of $4,166 per month.  Also, DK provided no information about Edible Hawaiian Islands Magazine in the attached Asset and Debt Statement.  About a month later, DK filed a revised Asset and

Debt Statement that included Edible Hawaiian Island Magazine valued at $60,000 with a debt of $34,000.

In connection with her Motion for Reconsideration less than two months later, DK provided an agreement to acquire Edible Hawaiian Island Magazine for $60,000 dated for 2013 that was not signed by the seller. And, in contrast to her income and expense statement, DK represented to the court, "I have never taken a salary from Edible Hawaiian Islands, LLC -- only the draws shown on my Schedule C returns, which was less than $25,000 per year for those three years."

Taking account of all the relevant circumstances surrounding DK's failure to meet deadlines, appear at hearings, and provide reliable information regarding the income from and value of her business, we cannot say that her conduct constituted excusable neglect. As such, we cannot say the family court abused its discretion by denying DK's Motion to Set Aside and Motion for Reconsideration based on HFCR Rule 60(b)(1).

### III. CONCLUSION

For the reasons above, we affirm the family court's (1) September 5, 2018 "Order Denying Defendant [DK's] Motion to Set Aside Entry of Default and Default Judgment filed June 29, 2018," and (2) October 1, 2018 "Order Denying [DK's] September 17, 2018 Motion to Reconsider the September 5, 2018

44

Order Denying Defendant's Motion to Set Aside Entry of [the June 26, 2017] Default and [July 24, 2017] Default Judgment."

DATED:  Honolulu, Hawaiʻi, November 30, 2022.

On the briefs:

Anthony L. Ranken and
Napoleon L. Taylor,
for Defendant-Appellant.

Elizabeth C. Melehan,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

<u>DISSENTING OPINION by Nakasone, J.</u>

I respectfully dissent because I would hold that the default judgment should have been set aside under Hawaiʻi Family Court Rules (**HFCR**) Rule 60(b)(1) for excusable neglect under the particular circumstances of this case, where: (1) the default judgment was entered during a time period after DK's counsel had withdrawn and DK was without counsel (**Self-Represented DK**);[1] (2) Self-Represented DK received two notices that left ambiguities about the adequacy of notification of the family court's discovery and continuance orders leading to the default judgment; (3) the default judgment was entered as a sanction for a discovery violation under circumstances that did not appear extreme enough to warrant this level of sanction; (4) DK provided an explanation for her neglect to render it excusable under a broad, equitable inquiry of the circumstances; and (5) assuming *arguendo* there was doubt as to whether Self-Represented DK's neglect was excusable, any doubt must be resolved in favor of the party seeking relief from a default judgment in the interest of justice, consistent with the public policy of favoring disposition of cases on their merits.

**1. Default judgments are disfavored and any doubt should be resolved in favor of the party seeking relief.**

"[T]he sanction of a default judgment is a harsh one." <u>Rearden Fam. Tr. v. Wisenbaker</u>, 101 Hawaiʻi 237, 254, 65 P.3d 1029, 1046 (2003). "Generally, default judgments are not favored because they do not afford parties an opportunity to litigate claims or defenses on the merits." <u>In re Genesys Data</u>

---

[1] I refer to DK as "Self-Represented DK" during the time period from March 9, 2017 (date of hearing at which DK's counsel was allowed to withdraw) to July 24, 2017 (date default judgment was filed). DK's new counsel made his first appearance upon filing DK's Motion to Set Aside Default Judgment on June 29, 2018.

Techs., Inc., 95 Hawaiʻi 33, 40, 18 P.3d 895, 902 (2001) (citations omitted).  In <u>Wisenbaker</u>, the Hawaiʻi Supreme Court reaffirmed that "defaults and default judgments are not favored and that <u>any</u> doubt should be resolved in favor of the party seeking relief, so that, in the interest of justice, there can be a full trial on the merits."  101 Hawaiʻi at 254, 65 P.3d at 1046 (emphasis added) (internal quotation marks and citations omitted).  Citing these principles in <u>In re TW</u>, 124 Hawaiʻi 468, 472, 248 P.3d 234, 238 (App. 2011), we held that the family court "abused its discretion in imposing the harsh and drastic sanction of default against Mother based upon her single non-appearance" and in granting the Department of Human Service's petition for permanent custody of the mother's child.  <u>Id.</u> at 474, 248 P.3d at 240.  Where a court has "the ability to levy lesser sanctions" such as "attorney's fees and monetary sanctions" for a party's failure to attend a conference or a hearing, the imposition of such lesser sanctions "better serves the interest of justice."  <u>Dela Cruz v. Quemado</u>, 141 Hawaiʻi 338, 345-46, 409 P.3d 742, 749-50 (2018) (citing <u>Wisenbaker</u>, 101 Hawaiʻi at 255, 65 P.3d at 1047) (brackets and internal quotation marks omitted).

> **2. Default judgment as a discovery sanction is a drastic measure appropriate as a last resort or only under extreme circumstances, such as willful, contemptuous or otherwise opprobrious behavior.**

This case did not involve a default judgment entered under HFCR Rule 55(b) where a party had "failed to appear or otherwise defend[.]"  Rather, it was a default judgment entered as a discovery sanction under HFCR Rule 37(b)(2)(c).  <u>See</u> <u>Wisenbaker</u>, 101 Hawaiʻi at 253-54, 65 P.3d at 1045-46 (holding that where default judgment was imposed as a sanction under RCCH

2

Rule 12.1 for settlement-conference-related conduct, Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 55(c) was not the appropriate basis for motion to set aside default judgment and defendant could move for relief under Rule 60(b)). In Long v. Long, 101 Hawaiʻi 400, 405-06, 69 P.3d 528, 533-34 (App. 2003), we observed that "granting judgments on default as sanctions for violating discovery orders are generally deemed appropriate only as a last resort, or when less drastic sanctions would not ensure compliance with a court's orders." (emphasis added) (quoting 7 J. Moore, Moore's Federal Practice § 37.50[2][a] (3d ed. 2002)). In W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co. Inc., 8 Haw. App. 354, 361-63, 802 P.2d 1203, 1207-1208 (1990), this court construed the parallel provision in the HRCP, Rule 37(b)(2), and noted that: "[t]he federal cases indicate that the Rule 37(b)(2)(c) drastic sanctions of dismissal and default judgment are authorized only in extreme circumstances[;]" and these sanctions "represent the most severe penalty that can be imposed." (cleaned up) (citations omitted).

"[T]he trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense." Weinberg v. Dickson-Weinberg, 123 Hawaiʻi 68, 75, 229 P.3d 1133, 1140 (2010) (italics and citations omitted). "[A] sanction which is tantamount to the entry of default 'should be supported by evidence of willful or contemptuous or otherwise opprobrious behavior.'" TW, 124 Hawaiʻi at 473, 248 P.3d at 239 (quoting Weinberg, 123 Hawaiʻi at 77, 229 P.3d at 1142). The following five factors are considered in when reviewing whether an entry of default judgment as a discovery sanction constitutes an abuse of discretion: "'(1) the public's interest in the expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to

3

the party moving for sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" Id. (citation omitted) (quoting Weinberg, 123 Hawaiʻi at 71, 229 P.3d at 1136).

Here, Self-Represented DK's discovery violation was for failing to respond to the first Request for Production of Documents[2] by a February 23, 2017 deadline. The motion to compel discovery was filed on May 4, 2017 and heard on May 31, 2017, after Self-Represented DK's counsel had withdrawn. The motion to compel requested, *inter alia*, that Self-Represented DK be ordered to respond, and for attorney's fees and costs. The motion argued that "[JK] has been more than reasonable in waiting more than two months for [DK]'s responses." It also requested the further sanction under HFCR Rule 37(b)(2) that: "[i]f [DK] fails to respond as ordered by this court, [JK] respectfully requests this court issue sanctions against [DK], including, but not limited to, refusing to allow [DK] to introduce evidence at the trial in this matter." Notably, JK did not request the sanction of default judgment in his motion.

In the Motion to Set Aside Default Judgment, DK set forth her reasons for missing the first May 31, 2017 hearing and the second July 20, 2017 status hearing on the motion to compel. DK's declaration explained that during the relevant time period,

---

[2] The Request for Production of Documents (**RPOD**) was dated January 24, 2017, approximately three months after JK's October 20, 2016 Complaint. The RPOD was a detailed, complex listing of 33 numbered requests, excluding subparts, covering a wide range of real estate and financial documents, including every conceivable type of asset and source of potential income and liability. The RPOD included, *inter alia*, all statements for all business accounts for the last four years, all check registers or electronic registers for the last three years, all checks signed for any account in DK's name for the last three years, loan applications in the last five years, all credit card statements for the last three years, asset ownership and value documents at the date of marriage, documents reflecting debt/liabilities as of the date of marriage, and a list of 25 sub-requests pertaining to "Edible Hawaiʻi Islands[.]"

she and the couple's teen daughter were moving out of the family home, where DK had lived for 23 years; DK was working two jobs; DK had no counsel at the time she received the "confusing and conflicting" hearing notices; and DK was "scrambling to find a replacement attorney" that she could afford and who did not "have a conflict of interest" due to JK's relationship with a per diem family court judge.[3]  In light of Self-Represented DK's

---

[3]     DK's declaration stated:

> 3.    In the four months that followed, I missed two important hearings:
>
>> a.    A discovery hearing on May 31 (2 days after my daughter and I moved out of our family home); and
>>
>> b.    A hearing for entry of default judgment on July 20, 2017 (originally set for June 27, 2017, but continued the day before the hearing, to July 20). The hearing was continued by [JK]'s attorney Ex Parte -- i.e., without notice to me.
>
> 4.    The following factors contributed to my missing these vital hearings:
>
>> a.    **Unrepresented by Counsel**. I was unrepresented by counsel as I was scrambling to find a replacement attorney (i) who I could afford; and (ii) who did not have a conflict of interest either because they had already been consulted by [JK], or because of [JK]'s extra-marital affair with Michelle Drewyer, who, at that time, was a Per Diem Family Court Judge;
>>
>> b.    **Moving**. I was moving out of the family home we had lived in for the last 23 years, with my 16 year old daughter, [];
>>
>> c.    **Working two jobs**. I was working long hours to pay for the living expenses of myself and my daughter. I took on a second job cleaning commercial properties.  [JK] made no financial contributions to our living expenses;
>>
>> d.    **Change of address**. I changed my personal address from our family home to my business P.O. box;
>>
>> e.    **Lack of Notification**. [JK]'s attorney contacted me by phone and email regarding settlement and discovery but in those conversations she never notified me of any hearing dates, nor did she provide me with a courtesy copy of upcoming motions or

explanation, her self-represented status, and the ambiguities surrounding the adequacy of the notification in the discovery and continuance orders Self-Represented DK received, as explained <u>infra</u>, the evidence does not show that there was "willful or contemptuous or otherwise opprobrious behavior" by Self-Represented DK to warrant the imposition of the harshest

---

hearing dates, which she could easily have done via email, voicemail, or text.

f.    [JK] also neglected to notify me of any hearing dates despite the fact that he knew I was unrepresented, I was still living in the family home, and he met with me on both May 28 and May 29, and on neither occasion did he let me know verbally, or by text, voicemail, or email, that there was an important hearing just two days later, on May 31st.

g.    **Lack of Service**. [JK]'s attorney did not serve the Court's May 31 order on me until June 27, 2018 [sic] - 14 days after the June 13 deadline to comply with the order had passed! See Plaintiffs Ex Parte Motion attached as Exhibit A in which plaintiffs attorney admits that I was not served with the May 31 order:

. . . .

h.    **Confusing and Conflicting Notices**. To add to the confusion, when [JK]'s attorney finally did serve the May 31 order, she did so at the same time as an Ex Parte Order filed on June 26, 2017 with the result that, at a time when I was unrepresented, I was served simultaneously with confusing and conflicting notices. . . .

5.    As a consequence, [JK] obtained a discovery order and a default judgment against me during this transitional period when I was moving out of the family home, and when I was unrepresented by counsel.

DK also listed the names of all of the family law attorneys she had contacted on Maui in her attempt to find replacement counsel, and stated she expanded her search to Oahu due to the "relatively small pool of family law attorneys on Maui." DK finally found her current counsel who was willing to handle her case, but she could not afford the retainer. DK explained that: "[i]t was only as the one-year deadline to file this motion was approaching that my attorney reviewed my case with the Office of Disciplinary Counsel and determined that he could defer payment of his fees until the case is resolved without violating the rules governing attorneys, which he then offered to do."

6

discovery sanction of default judgment -- relief that went beyond the attorney's fees and costs and preclusion of evidence sanctions that JK's motion requested pursuant to HFCR Rule 37(b)(2).  TW, 124 Hawaiʻi at 473, 248 P.3d at 239 (quoting Weinberg, 123 Hawaiʻi at 77, 229 P.3d at 1142).

**3.    The two notices that Self-Represented DK received leading up to the default judgment left ambiguities about the adequacy of their notification.**

In Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 398 (1993), the United States (**U.S.**) Supreme Court found that a notice that was "outside the ordinary course" in a bankruptcy case due to its "'peculiar and inconspicuous placement'" left a "dramatic ambiguity" in the adequacy of the notification.  (Citation omitted).  Pioneer set forth an equitable standard for review of "excusable neglect" for tardy claims filed after a bankruptcy court's "bar date" deadline; and this same equitable standard was expressly adopted by the Hawaiʻi Supreme Court in Enos v. Pac. Transfer & Warehouse, Inc., 80 Hawaiʻi 345, 352, 910 P.2d 116, 123 (1996), and Eckard Brandes, Inc. v. Dep't. of Labor and Indus. Rels., 146 Hawaiʻi 354, 364, 463 P.3d 1011, 1021 (2020), to review "excusable neglect" for late extensions of time to file a notice of appeal under Hawaiʻi Rules of Appellate Procedure Rule 4(a)(4)(B).  The problematic notice in Pioneer was a significant factor in the U.S. Supreme Court's conclusion that counsel's neglect in that case was excusable, as follows:

> In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date.  We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases.  As the Court of Appeals noted, ordinarily the bar

7

> date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. We agree with the court that the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors' meeting," without any indication of the significance of the bar date, left a "dramatic ambiguity" in the notification. This is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be "excusable." In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, "excusable."

507 U.S. at 398-99 (emphases added) (citation and brackets omitted).

Here, in my view, the two notices served simultaneously appear to be "confusing and conflicting" as DK stated in her declaration, and leave ambiguities in the adequacy of the notification provided to a self-represented party like DK. The "Ex Parte Motion to Extend Deadline and to Continue Status Hearing" (**6/26/17 EPM to Continue 6/27/17 Hearing**) and the "Order of the Hearing Held May 31, 2017 on Plaintiff's Motion to Compel Discovery and for Attorney's Fees and Costs filed May 4, 2017" (**Order of 5/31/17 Hearing**) were both filed simultaneously on June 26, 2017, the day prior to the June 27, 2017 continued hearing on JK's motion to compel discovery. The single Certificate of Service (**COS**) filed June 27, 2017, indicates that Self-Represented DK was simultaneously served with two documents at her P.O. Box.

**Document No. 1: 6/26/17 EPM to Continue 6/27/17 Hearing**

The 6/26/17 EPM to Continue 6/27/17 Hearing is a six-page document. Notably, it is filed "ex parte," without any notice to the other side, seeking a last-minute continuance of the next day's hearing, the afternoon before the hearing. The

Declaration of Counsel does not indicate whether JK's counsel made efforts to notify Self-Represented DK regarding the last-minute EPM to continue the hearing, as would be required in the circuit court. <u>Cf.</u> Rules of the Circuit Court of Hawaiʻi (**RCCH**) Rule 7.2(f).[4]

The Declaration of Counsel states that JK's counsel "has drafted the Order of the hearing held May 31, 2017, but has not provided a copy to [Self-Represented DK]." This statement indicates that Self-Represented DK was not given any information about what occurred at the May 31, 2017 discovery hearing that she missed and had not received any notice of the subsequent June 27, 2017 hearing.

The "Ex Parte Order" is inconspicuously placed, and does not appear until page five of the EPM. The Ex Parte Order sets a new deadline of July 10, 2017 for Self-Represented DK to comply with the discovery order and a new date of July 20, 2017 for a "status hearing" on the motion to compel. The final paragraph warns Self-Represented DK that if she "fails to appear at that status hearing mentioned above or fails to respond to the discovery requests by the deadline stated herein, the court

---

[4] The HFCR do not have any rules pertaining to *ex parte* filings. By contrast, RCCH Rule 7.2, which applies only to cases governed by the HRCP, does contain a rule regarding last-minute *ex parte* filings, for which there are a number of requirements for EPMs and shortening of time including: the reasons for filing the motion *ex parte*, efforts made to notify parties, and, if shortening time or advancing a hearing, the efforts made to obtain a stipulation or response from the other parties in the case, or an explanation stating the reasons why "no attempt was made." <u>See</u> RCCH Rule 7.2(f) (2014) ("A motion entitled to be heard *ex parte* shall: (1) cite the statute, rule, or other authority authorizing the court to entertain the motion *ex parte*; (2) be supported by an affidavit or declaration stating the reason(s) for filing the motion *ex parte*, the efforts made to notify parties, and, if the motion is to shorten time or advance a hearing pursuant to subsection (g)(5) of this Rule, the efforts made to obtain a stipulation or response from the other parties in the case or the reason(s) why no attempt was made; (3) be accompanied by a proposed order; and (4) be served on the date that the motion was presented to the court.").

may granted [sic] the proposed Divorce Decree submitted and filed by [JK]."

The Ex Parte Order's notification that there is a "status hearing" on a motion to compel discovery lacked explanation of its significance, as it did not inform Self-Represented DK that the "status hearing" may turn into a default judgment hearing. The warning that the consequence for failure to appear or comply with the discovery request is the court "may granted [sic] the proposed Divorce Decree" -- lacked explanation that the family court was referring to a discovery sanction of "judgment by default against the disobedient party" under HFCR Rule 37(b)(2)(C). The record also does not reflect that a document entitled "Proposed Divorce Decree" or "Divorce Decree" was filed by JK as the family court ordered; instead, a differently entitled document, "Judgment Granting Divorce and Awarding Child Custody" is inconspicuously attached to a separate document, the Order of 5/31/17 Hearing. Thus, the Ex Parte Order leaves multiple ambiguities as to the adequacy of the notification Self-Represented DK received, due to the "inconspicuous placement" issues and lack of "explanation of its significance." Pioneer, 507 U.S. at 398.

**Document No. 2:  Order of 5/31/17 Hearing**

The Order of 5/31/17 Hearing is a thirteen-page document, and pages 1 and 2 inform Self-Represented DK about what transpired at the hearing she missed, and order Self-Represented DK "to respond to the discovery requests no later than June 13, 2017." (Emphasis added). However, the Order is not filed or served until two weeks after this deadline had passed. The Order thus appears obsolete because it is impossible to comply with a passed deadline.

The Order of 5/31/17 Hearing informs Self-Represented DK that she must appear at a further hearing on June 27, 2017 at

10

10:00 a.m., yet the Order was served on Self-Represented DK's P.O. Box on the day of the hearing, making the notice nonsensical. Generating additional confusion, this Order states the June 27, 2017 hearing is at **10:00 a.m.,** but the first document discussed <u>supra</u>, the 6/26/17 EPM to Continue 6/27/17 Hearing, had a **different hearing time of <u>1:30 p.m</u>**. on page one.

The Order of 5/31/17 Hearing advised Self-Represented DK that if she "fails to respond to the discovery requests and fails to appear at the hearing of June 27, 2017," the family court "may grant a proposed Divorce Decree submitted to the Court by [JK] which is attached hereto as Exhibit 'B'." For the reasons already set forth <u>supra</u>, this obsolete order's notifications also lack explanation of its significance and the significance of the "Judgment Granting Divorce and Awarding Child Custody" that was attached. <u>See</u> <u>Pioneer</u>, 507 U.S. at 398. Finally, as set forth <u>supra</u>, the only notice of the "proposed Divorce Decree" that Self-Represented DK ever received was confusingly placed, attached to this second obsolete document giving notice of a discovery deadline that had passed weeks before. Thus, the Order of 5/31/17 Hearing, viewed together with the Ex Parte Order, amplifies the ambiguities as to the adequacy of the notification Self-Represented DK received. <u>See</u> <u>id.</u>

**4. Self-Represented DK's neglect appears excusable under a broad, equitable inquiry taking into account all relevant circumstances.**

The Majority applies the Ninth Circuit's equitable determination of excusable neglect, that: "The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" <u>Brandt v. Am. Bankers Ins. Co. of Fla.</u>, 653 F.3d

11

1108, 1111 (9th Cir. 2011) (quoting <u>Pioneer</u>, 507 U.S. at 395). I agree with this standard but disagree with the conclusion reached. The <u>Brandt</u> standard is the same equitable standard for "excusable neglect" reaffirmed by the Hawaiʻi Supreme Court in <u>Eckard Brandes</u>, which the supreme court explained came from <u>Pioneer</u>:

> Accordingly, as indicated by the United States Supreme Court in <u>Pioneer</u>, 507 U.S. 380, 113 S.Ct. 1489, which was cited favorably in <u>Enos</u>, whether "excusable neglect" exists is "at bottom an equitable" decision; it is necessary to first determine whether there is "neglect," and, if so, whether the "neglect" is "excusable." 507 U.S. at 393-94, 113 S.Ct. 1489. As also noted, with respect to determining whether existing "neglect" could be deemed "excusable," <u>Enos</u> expressly adopted the equitable standard set forth by the United States Supreme Court in <u>Pioneer</u>, and stated, "reasons for failure to comply with a court-ordered deadline range from acts of God to a party's choice to flout the deadline and ... 'excusable neglect' is not restricted to those circumstances beyond a party's control." We therefore clarify that, as indicated in [<u>Enos</u>], "excusable neglect" is to be construed pursuant to its plain language: "neglect" that is "excusable," which, "involve[s] a broad, equitable, inquiry" "taking into account all relevant circumstances surrounding the party's omission." <u>Pioneer</u>, 507 U.S. at 389, 393-94, 113 S.Ct. 1489.

146 Hawaiʻi at 364, 463 P.3d at 1021 (emphases added) (footnote omitted). "[E]quity jurisprudence" is "not bound by the strict rules of the common law," but enables a court to "mold its decrees to do justice amid all the vicissitudes and intricacies of life." <u>Haw. Ventures, LLC v. Otaka, Inc.</u>, 114 Hawaiʻi 438, 456, 164 P.3d 696, 714 (2007) (quoting <u>Fleming v. Napili Kai, Ltd.</u>, 50 Haw. 66, 70, 430 P.2d 316, 319 (1967) (internal quotation marks omitted)). While the principles upon which equity jurisprudence proceeds are "eternal[,] . . . their application in a changing world will necessarily change to meet changed situations." <u>Id.</u>

In concluding the neglect here was inexcusable, the Majority relies on <u>Pogia v. Ramos</u>, 10 Haw. App. 411, 876 P.2d

12

1342 (1994) and Joaquin v. Joaquin, 5 Haw. App. 435, 698 P.2d 298 (1985), both of which are distinguishable from this case. Pogia involved a self-represented defendant who failed to answer a complaint on grounds that she did not understand "'what the legal papers meant,'" and we held that in order to establish "excusable neglect" under HFCR Rule 60(b)(1), a defaulted party "who failed to answer a complaint must make a showing of why the party was justified in failing to respond to the complaint or to obtain an extension of time to respond," and that "'ignorance of the law'" was not "excusable neglect." 10 Haw. App. at 416, 876 P.2d at 1345 (citations omitted). Unlike the notices Self-Represented DK received here that contained multiple ambiguities in the adequacy of their notification, we noted that the summons in Pogia "clearly sets forth Defendant's obligations to respond within twenty days or have judgment by default taken against her." Id. at 417, 876 P.2d at 1345. Joaquin involved a defendant who had signed a divorce agreement and appearance and waiver without reading them, which we held did not constitute "excusable neglect" under 60(b)(1). 5 Haw. App. at 443, 698 P.2d at 304. We held there that the defendant "'must make some showing of why he was justified in failing to avoid mistake or inadvertence. Gross carelessness is not enough.'" Id. (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2858 (1973); 7 Moore's Federal Practice § 60.22[2] (1983)). Here, Self-Represented DK did not sign documents without reading them, and there is "some showing" why DK's neglect may have been excusable due to the multiple ambiguities surrounding the adequacy of the notifications she received. Id.

In Ass'n of Apartment Owners of Kai Makani v. Oleksa, No. CAAP-16-0000611, 2019 WL 2281248, at *3 (May 29, 2019) (SDO), we concluded that relief was warranted under HRCP Rule 60(b)(1), under circumstances where the Oleksas, who were self-

13

represented like DK here, supplied justification for their failure to oppose a  motion for summary judgment that constituted excusable neglect, where they left on a trip and did not receive the motion until after they returned from their trip, which had been unexpectedly lengthened due to a medical emergency.  We explained that:

> [u]nder HRCP Rule 60(b)(1), a party can be granted relief from judgment where there is a showing of, inter alia, 'excusable neglect' that interferes with the fair dispensation of justice." Isemoto Contracting Co., Ltd, v. Andrade, 1 Haw. App. 202, 204, 616 P.2d 1022, 1025 (1980). "HRCP Rule 60(b)(1), . . . exists to remedy some dereliction of the movant in the litigation itself; for example, failure to answer the complaint, failure to answer interrogatories, ineffective assistance of counsel, or unauthorized settlement by counsel." Citicorp Mortg., Inc., v. Bartolome, 94 Hawaiʻi 422, 437, 16 P.3d 827, 842 (App. 2000) (citations omitted).

Id.

Here, Self-Represented DK's failure to comply with the discovery order and missing two hearings on the motion to compel constituted neglect.  HFCR Rule 60(b)(1) exists to remedy this type of dereliction in the litigation by a movant whose neglect is shown to be excusable.  See id.  Applying a "broad, equitable, inquiry taking into account all relevant circumstances surrounding [Self-Represented DK]'s omission[s]," which include her self-represented status, the multiple ambiguities surrounding the adequacy of the notification that Self-Represented DK received, her personal situation regarding the housing transition and working two jobs, and the financial and logistical challenges she encountered in finding conflict-free replacement counsel on Maui –- in my view, all militate in favor of a conclusion that her neglect was excusable.  Eckard Brandes, Inc., 146 Hawaiʻi at 364, 463 P.3d at 1021; see Pioneer,

507 U.S. at 398-99; Haw. Ventures, LLC, 114 Hawaiʻi at 456, 164 P.3d at 714.

### 5. HFCR Rule 60(b)(1) relief was warranted.

For the reasons explained above, I would conclude that relief under HFCR Rule 60(b)(1) was warranted because Self-Represented DK's neglect appeared excusable under a broad, equitable inquiry of the relevant circumstances; and assuming arguendo there was doubt whether her neglect was excusable, our case law counsels that, in the interest of justice, **any** doubt in setting aside a default judgment should be resolved in favor of the party seeking relief. See Wisenbaker, 101 Hawaiʻi at 254, 65 P.3d at 1046. The record also reflects that the harshest discovery sanction of default judgment was imposed in this case, where Self-Represented DK's failure to respond did not rise to the level of willful, contemptuous, or opprobrious conduct justifying this level of discovery sanction. See TW, 124 Hawaiʻi at 474, 248 P.3d at 240; Weinberg, 123 Hawaiʻi at 77, 229 P.3d at 1146. Setting aside the default judgment in this case is also consistent with the public policy favoring disposition of cases on their merits. See Weinberg, 123 Hawaiʻi at 71, 229 P.3d at 1136; Wisenbaker, 101 Hawaiʻi at 254, 65 P.3d at 1046. Accordingly, I would conclude that the family court abused its discretion in denying the motion to set aside the default judgment. See LaPeter v. LaPeter, 144 Hawaiʻi 295, 304, 439 P.3d 247, 256 (App. 2019) (reviewing HFCR Rule 60(b) motion for abuse of discretion).

/s/ Karen T. Nakasone
Associate Judge